**United States District Court**
**District of Columbia**

| | |
|---|---|
| **The Christian Civic League of Maine, Inc.**<br>  70 Sewall Street<br>  Augusta, ME 04330**,**<br><div align="right">***Plaintiff*,**</div><br>  *v.*<br><br>**Federal Election Commission,**<br>  999 E Street, NW<br>  Washington, DC 20463**,**<br><div align="right">***Defendant*.**</div> | <br><br><br><br>**Cause No.** 1:06CV00614 (LFO)<br><br>THREE-JUDGE COURT |

## Motion to Consolidate the Hearing on the Motion for Preliminary Injunction with a Hearing on the Merits of the Verified Complaint

Pursuant to Federal Rule of Civil Procedure 65(a)(2), Plaintiff the Christian Civic League of Maine, Inc. ("CCL") hereby moves this court to consolidate the hearing on Plaintiff's Motion for Preliminary Injunction with the trial on the merits of Plaintiff's Verified Complaint. In support of this motion, Plaintiff states as follows:

**The Resolution of This Case Turns on Purely Legal Issues.**

There is no conflict of material fact here; the facts are straightforward, verified, and sufficient to resolve this matter. The ad CCL intends to run qualifies as an electioneering communication, *Verified Complaint* (*"VC"*) ¶¶ 23-30. CCL does not qualify for any exception, *VC* ¶ 22, and the electioneering communication prohibition will make CCL's ad illegal on May

**Motion to Consolidate**

14, a date on which CCL would run the ad because a critical vote by Sen. Snowe will be imminent. *VC* ¶ 13.[1] CCL and the FEC disagree only on questions of law: what are the parameters of a constitutionally necessary exception to the electioneering communications prohibition and does CCL's ad fall within those parameters.[2]

Nothing needs resolution regarding the underlying facts. CCL will present the same facts at any hearing on the merits and the standard of proof to which they will have been subjected is sufficient for their consideration on the claim's merits. "[A] Rule 65(a)(2) accelerated trial is a routine procedure designed to preserve judicial resources and save the parties from wasteful duplication of effort."*NOW v. Operation Rescue*, 747 F. Supp. 760, 768 (D.D.C. 1990). It is appropriate here because no material facts are at issue and development of any facts beyond the date of the hearing of the preliminary injunction would be duplicative and wasteful of the parties' and the Court's resources.

## I.    All Facts Relevant To Resolving CCL's Complaint Are Already Before the Court.

The Bipartisan Campaign Reform Act ("BCRA") defined an electioneering communication as any broadcast, cable, or satellite communication which . . . refers to a clearly

---

[1]CCL has agreed to an expedited schedule for the FEC's discovery of these matters through interrogatories, requests for the production of documents and the deposition of a corporate designee. While Plaintiff believes that some of the requested discovery goes well beyond the scope permitted under the rules and relevant to the issues involved, Plaintiff intends to answer as fully as possible, subject to appropriate objections. While the timing of such discovery responses is currently being negotiated, Plaintiff intends to agree to complete the requested discovery before the date set for the FEC's response to CCL's Motion for Preliminary Injunction.

[2]Furthermore, the FEC need not duplicate the extensive discovery conducted in *McConnell v. FEC*, since this court can take judicial notice of any relevant material in the record of that case.

**Motion to Consolidate**                    2

identified candidate for Federal office [and] is made within . . . 60 days before a general

. . . election for the office sought by the candidate; or . . . 30 days before a primary . . . election

. . . for the office sought by the candidate; and . . . is targeted to the relevant electorate." 2 U.S.C.

§ 434(f)(3)(A)(i). *See also* 11 C.F.R. § 100.29 (definition of "electioneering communication").

The BCRA, as adopted, amended 2 U.S.C. § 441b to prohibit corporations, like CCL, from

making electioneering communications, as defined above. The prohibition provides that "[i]t is

unlawful . . . for any corporation whatever . . . to make a contribution or expenditure in

connection with any [Federal] election. . . . For purposes of this section . . . , the term

'contribution or expenditure' includes . . . any applicable electioneering communication . . . ." 2

U.S.C. § 441b(a)-(b); *see also* 11 C.F.R. §§ 114.2 and 114.14 (regulatory ban on corporate

funding of electioneering communications). In *McConnell v. FEC*, 540 U.S. 93, the Supreme

Court upheld the electioneering communication prohibition against a facial challenge. In

*Wisconsin Right to Life, Inc. v. FEC*, 126 S.Ct. 1016 (2006) ("*WRTL*"), the Supreme Court

explained that as-applied challenges to the electioneering communication prohibition were not

resolved or precluded by its holding in *McConnell*. 126 S.Ct. at 1018. On remand in the district

court, that case is pending and not resolved. This case presents the as applied issue.

    This case presents two central issues: (1) what is the standard for identifying genuine

grassroots lobbying[3] and (2) whether CCL's proposed ads fit the standard. The facts already

---

[3]One useful proposal for limning a grassroots lobbying exception to the electioneering communications prohibition has recently been offered by a diverse group of interested parties. The FEC has published Notice 2006-4, entitled "Rulemaking Petition: Exception for Certain 'Grassroots Lobbying' Communications From the Definition of 'Electioneering Communication.'" 71 Fed. Reg. 13557. The petition was from a broad-spectrum coalition of groups asking for an expedited rulemaking
        to revise 11 C.F.R. 100.29(c) to exempt from the definition of "electioneering communication" certain "grassroots lobbying" communications that reflect all of the

**Motion to Consolidate**                    3

verified in CCL's Complaint are completely sufficient to decide the legal issue presented: whether CCL's ad, as financed, worded, scheduled, and broadcast according to its Verified Complaint, is within the parameters of a constitutionally-required grassroots lobbying exception to the electioneering communication prohibition. Put another way, any question of whether "[t]he facts suggest [CCL's] advertisements may fit the very type of activity that *McConnell* found Congress had a compelling interest in regulating,"can be completely answered with facts presented in the Verified Complaint. *WRTL*, 126 S.Ct. at 1018.

Whether CCL's advertisements fit the type of activity Congress has a compelling interest in regulating depends entirely on the content of the advertisement. That information is provided in the Verified Complaint, and no additional facts are relevant to any manageable test that this Court might formulate to answer the question of whether their ad is within the parameters of a constitutionally-required grassroots lobbying exception to the electioneering communication prohibition.

No information outside the content of the ad proposed as an exception to the

---

following principles: 1. The "clearly identified federal candidate" is an incumbent public officeholder; 2. The communication exclusively discusses a particular current legislative or executive branch matter; 3. The communication either (a) calls upon the candidate to take a particular position or action with respect to the matter in his or her incumbent capacity, or (b) calls upon the general public to contact the candidate and urge the candidate to do so; 4. If the communication discusses the candidate's position or record on the matter, it does so only by quoting the candidate's own public statements or reciting the candidate's official action, such as a vote, on the matter; 5. The communication does not refer to an election, the candidate's candidacy, or a political party; and 6. The communication does not refer to the candidate's character, qualifications or fitness for office.

While CCL does not believe that this rule goes as far as the U.S. Constitution would extend protection to grassroots lobbying, it provides a useful definition that balances the concerns of all sides and provides a workable test.

**Motion to Consolidate**                                      4

electioneering communication prohibition is determinative or even relevant to the question. The

would-be speaker's subjective intent is not properly a part of any other similar inquiry in the First

Amendment area. There is no intent requirement in determining whether a communication is an

"independent expenditure"[4] or an "electioneering communication."[5] Nor does "actual malice"

include subjective ill will in defamation cases. Nor is subjective intent a factor in the *Noerr-*

*Pennington* cases, where, as here, the First Amendment right of petition is at issue. Likewise

irrelevant are facts having to do with context. In any event, between the Verified Complaint and

---

[4] "'Independent expenditure' means an [uncoordinated] expenditure by a person . . . expressly advocating the election or defeat of a clearly identified candidate . . . ." 2 U.S.C. § 431(17). "'Clearly identified' means that — (A) the name of the candidate involved appears; (B) a photograph or drawing of the candidate appears; or (C) the identify of the candidate is apparent by unambiguous reference." 2 U.S.C. § 431(18).

So whether a communication constitutes an independent expenditure turns solely on whether the communication *itself* contains explicit words expressly advocating a clearly identified candidate's election or defeat. What an organization's PAC said, what press releases said, and whether some candidate cares about the same issue are simply not part of the analysis. There is express advocacy, or there is not, based on the communication itself. *Cf. Buckley v. Valeo*, 424 U.S. 1, 43 (1976) (express advocacy "limited to communications that include explicit words of advocacy . . . .").

[5] "Electioneering communication" is defined as a "communication" meeting certain criteria. 2 U.S.C. § 434(f)(3). It is a "communication which . . . refers to a clearly identified candidate for Federal office [and] is made within . . . 60 days before a general . . . election for the office sought by the candidate; or . . . 30 days before a primary . . . election . . . for the office sought by the candidate; and . . . is targeted to the relevant electorate." 2 U.S.C. § 434(f)(3)(A)(i). Nowhere in the definition is there any instruction to look outside the context of the communication itself.

The necessary implication of the remand by the Supreme Court of *WRTL* is that there may be "genuine issue ads," *McConnell*, 540 U.S. at 206 n.88, that are broadcast within prohibition periods. So facts regarding why the broadcast are made during those periods are irrelevant. And facts about if or what the organization's PAC said or what an organization has otherwise said are irrelevant as well. In fact, *McConnell* upheld the definition of electioneering communication *because* it introduced none of the vagueness posed by the statute at issue in *Buckley*. 540 U.S. at 192, 194. And the vagueness of the statute at issue in *Buckley* was cured by construing it to consider only the content of a communication. To consider outside factors now is to reintroduce the vagueness that the Court has never countenanced in a regulation affecting core First Amendment speech.

**Motion to Consolidate**                    5

the discovery to which CCL has consented, there is a full record on which this Court can resolve the pressing legal question this case presents.

Moreover, the *legitimacy* of any discoverable factual issue here is limited by CCL's right to petition. Any application of the electioneering communication prohibition must respect the limits imposed by this fundamental constitutional right. To be necessary for the disposition of this matter, any relevant facts not already in the record by the time of the hearing for preliminary junction must go to the question of whether the electioneering communication prohibition rightly applies to CCL's grassroots lobbying ad. But when, as here, the right to petition is at issue, questions of intent or motive are not even legitimate.

### A. The Constitution Limits Government Action Infringing on the Right to Petition.

The right to petition is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967)). Grassroots lobbying is a quintessential exercise of the right to petition. *Eastern R.R. President Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-138 (1961); *Liberty Lobby, Inc. v. Pearson*, 390 F. 2d 489, 491 (D.C. Cir. 1968). In addition, as general advocacy of positions in matters of public import, grassroots lobbying is protected under the First Amendment as part of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Even in the context of federal antitrust and labor relations law[6], where no additional First

---

[6]The *Noerr-Pennington* line of cases demonstrates that, in whatever context the right to petition is affected, it enjoys powerful constitutional protection. *Noerr* and *Pennington* established that the right to petition trumps otherwise applicable antitrust law. The principle of

**Motion to Consolidate**                                    6

Amendment rights attach, the government cannot prohibit activities that would otherwise
violate antitrust or labor law when those actions are "'an attempt to persuade the legislature
or the executive to take particular action with respect to a law that would produce a restraint
or a monopoly.'" *BE & K*, 536 U.S. at 525 (quoting *Noerr*, 365 U.S. at 136). The right to petition
trumps the provisions of such laws, even where the petitioners seek to affect the debate over how
those very laws do or should apply.

The *Noerr-Pennington* doctrine provides that prosecution can occur in such cases only
when the right to petition is not genuinely at issue because the efforts to petition are "sham." *See*
*Noerr*, 365 U.S. at 144 (in the antitrust context, immunity does not extend to lobbying
"ostensibly directed toward influencing governmental action [that] is a mere sham to cover what
is actually . . . an attempt to interfere directly with the business relationships of a competitor.").
Any further facts to be developed regarding CCL's intent in running the advertisements at issue
here, ostensibly on the theory that information gleaned will establish that [CCL's] advertisements
. . . fit the very type of activity that *McConnell* found Congress had a compelling interest in
regulating," *WRTL*, 126 S.Ct. at 1018,  are in contravention to the First Amendment's protection
of the right to petition. In short, facts about CCL's intent or the context of the advertisement are
only relevant to establishing an *exception* to the right-to-petition immunity in the context of the
electioneering communication prohibition. And such an exception applies here only if CCL's

---

immunity from prosecution when petitioning government was extended to "situations where
groups use . . . courts to advocate their causes and points of view" in *California Motor Transport
Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972). The Court later applied the *Noerr-
Pennington* doctrine in the context of labor relations law in *Bill Johnson's Restaurants, Inc. v.
NLRB*, 461 U.S. 731, 737, 743 (1983). It was applied it to a situation where groups used the court
to advocate in the context of labor relations law in *BE & K Constr. Co. v. NLRB*, 536 U.S. 516
(2002).

**Motion to Consolidate**                                      7

grassroots lobbying is "sham petitioning."

But the exception to *Noerr-Pennington* petitioner immunity has *two* elements, including a key threshold inquiry. Even in the antitrust and labor relations contexts, where no separate First Amendment speech concerns attach, petitioners' immunity generally applies regardless of the petitioners' subjective intent or purpose. In *Professional Real Estate Investors v. Columbia Pictures Industries*, the Court held that whether litigation asserted to be an exercise of the right to petition was "sham" must be determined by a two-part test:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. [footnote omitted] Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationship of a competitor" through the "use [of] the governmental process — as opposed to the *outcome* of that process — as an anticompetitive weapon."

508 U.S. 49, 60-61 (1993) (citations omitted; emphasis in original); *accord, BE &K*, 536 U.S. at 526.

A petition, whether offered by lobbying or litigation, is *subjectively* a sham if, for example, the intent is to interfere directly with the business relationships of a competitor, *Noerr*, 365 U.S. at 144, or to penalize or retaliate against a protected labor activity, *Bill Johnson's*, 461 U.S. at 743. However, an improper subjective intent, while necessary, is not sufficient to make a petition a sham and trigger the exception to petitioner immunity because there is a threshold requirement.

Protection of the exercise of the right to petition still exists where there is "'a concerted effort to influence public officials *regardless of intent or purpose.*" *BE & K*, 536 U.S. at 525

**Motion to Consolidate**                          8

(2002) (quoting *Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965)) (emphasis added). "For a suit to [be excepted from petitioners' immunity], then, it must be a sham *both* objectively and subjectively." *Id.* at 526 (citing *Professional Real Estate Investors*, 508 U.S. at 60-61) (emphasis in original). The Supreme Court has accordingly held that unless no reasonable litigant could expect success on the merits, even if a labor law litigator intended by his litigation "to retaliate against the defendant for exercising rights protected by the [NLRA]," *Bill Johnson's*, 461 U.S. at 743, the petition effort was not sham and the protection demanded by the federal constitution for the right to petition prevented application of the NRLA. *BE & K*, 536 U.S. at 526.

The transferable concept to the present application of the right to petition is that unless CCL's grassroots lobbying ads themselves are objectively without merit as exercising the right to petition, then any finding of a subjective intent to influence elections would not be enough to deny the ads immunity from the electioneering communication prohibition. As the Supreme Court said in *Professional Real Estate Investors*, "only if challenged litigation is objectively meritless may a court [even] *examine* the litigant's subjective motivation." 508 U.S. at 60 (emphasis in original). The threshold objective test must be overcome before inquiry may be made into subjective intent.

But Defendants cannot show that the proposed grassroots lobbying is objectively meritless. It is objectively a genuine exercise of the right to petition by the plain terms of the communication, the only constitutionally relevant criteria.[7] Accordingly, as the Court held in

---

[7] Moreover, it also objectively looks nothing like the "sham issue ads" identified as being the "functional equivalent" of express advocacy in *McConnell*. The necessary implication of the remand by the Supreme Court of *WRTL* is that there may be "genuine issue ads," *McConnell*, 540 U.S. at 206 n.88, that are broadcast within prohibition periods. So facts about intent are irrelevant.

**Motion to Consolidate**                    9

*Professional Real Estate Investors*, discovery as to possible underlying "motivations in bringing the suit" should be denied because such questions "were rendered irrelevant by the objective legal reasonableness of the litigation [or, in this case, the exercise of the right to petition through communications]." *Id.* at 65-66. This Court should likewise not delay resolution awaiting facts that cannot be relevant.

## II.    Here, A Decision on the Motion For Preliminary Injunction is Essentially a Decision on the Merits

CCL's primary objective in bring this suit is to broadcast an ad during the blackout period in order to influence the vote of Senators Snowe and Collins on the Marriage Protection Amendment, S.J. Res. 1, scheduled for early June. *VC* ¶¶ 9-11. If the FEC is not enjoined from enforcing the electioneering communication prohibition against CCL's broadcast of the ad, it will not run the ad starting on May 14, and the opportunity for and commensurate First Amendment rights of speech and petition will have been irreparably lost. Therefore, whether or not the FEC is enjoined from enforcing electioneering communication prohibition against the ad on May 14, 2006, the subject of the preliminary injunction motion, will determine this matter. Consolidation will merely formally recognize what is actually happening.

## III.    Consolidation Will Facilitate Statutorily Required Expedition.

Congress required expedition in litigation surrounding the BCRA because, as noted above, regulations affecting First Amendment rights are particularly disposed to irreparably harm. The opportunity and freedom to speak are lost if not timely taken. Both parties acknowledge that this case requires expedition "to the greatest possible extent" under BCRA § 403, (a)(4), 116 STAT.113-14. The FEC agreed to an expedited briefing schedule on the CCL's Motion for Preliminary Injunction, *see Pl.'s Motion to Expedite* at 2 (agreeing to an expedited

**Motion to Consolidate**                    10

schedule), and CCL agreed to expedited discovery, despite the decidedly redundant and irrelevant information that such discovery will mainly produce. Defendants will have ostensibly discovered all that they consider relevant and it is therefore difficult to imagine that any factfinding perceived as necessary could still be outstanding at the time of the hearing on the Motion for Preliminary Injunction, sometime after April 24, 2006. *See Pl.'s Motion to Expedite* at 2.

For the above reasons, this Court should consolidate the hearing of Plaintiff's Motion for Preliminary Injunction with a hearing on the merits.

Pursuant to Local Rule of Civil Procedure 7(m), CCL has conferred with legal counsel for the FEC regarding this motion, and counsel did not consent.

Respectfully submitted,

/s/ M. Miller Baker
M. Miller Baker, D.C. Bar # 444736
Michael S. Nadel, D.C. Bar # 470144
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
202/756-8000 telephone
202/756-8087 facsimile
*Local Counsel for Plaintiff*

/s/ James Bopp, Jr.
James Bopp, Jr.
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807
812/232-2434 telephone
812/234-3685 facsimile
*Lead Counsel for Plaintiff*

**Motion to Consolidate**                    11