UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
AUG 17 2004
Clerk, U.S. District Court
District of Columbia

WISCONSIN RIGHT TO LIFE, INC., )
                                )
            Plaintiff,          )   Civil No. 04-1260 (DBS, RWR, RJL)
                                )
    v.                          )   THREE-JUDGE COURT
                                )
                                )
FEDERAL ELECTION COMMISSION,    )
                                )
            Defendant.          )
_____)

## MEMORANDUM OPINION AND ORDER

This matter coming before the court on plaintiff's motion for a preliminary injunction, and the court having considered the affidavits and representations of counsel, solely for the purposes of the motion for a preliminary injunction, the court makes the following findings of fact:

1. Plaintiff Wisconsin Right to Life, Inc. (WRTL) is a nonprofit, nonstock, Wisconsin, ideological advocacy corporation recognized by the Internal Revenue Service as tax-exempt under § 501(c)(4) of the Internal Revenue Code.

2. Defendant Federal Election Commission (FEC) is the government agency charged with enforcing the relevant provisions of the Federal Election Campaign Act, as amended by the Bipartisan Campaign Reform Act of 2002 (BCRA).

3. WRTL admits that it does not qualify for any exception permitting it to pay for

1



electioneering communications from corporate funds because (a) it is not a "qualified nonprofit corporation" (QNC) within the definition of 11 C.F.R. § 114.10 so as to qualify for the exception found at 11 C.F.R. § 114.2(b)(2) to the electioneering communication prohibition and (b) its advertisements are "targeted" so that it does not fit the exception for § 501(c)(4) organizations as described in 2 U.S.C. § 441b(c)(2). 2 U.S.C. § 441b(c)(6)(A).

    4. U.S. Senator Russell Feingold of Wisconsin is running for reelection this year.

    5. As early as September, 2003, candidates opposing Senator Feingold made Senator Feingold's support of Senate filibusters against judicial nominees a campaign issue. Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. (Def.'s Opp'n) Exh. 10-14.

    6. WRTL maintains a political action committee (PAC).

    7. In March 2004, WRTL's PAC endorsed three candidates opposing Senator Feingold and announced that the defeat of Senator Feingold was a priority. Def.'s Opp'n Ex. 4, 5, 6, 7.

    8. In a news release on July 14, 2004, WRTL criticized Senator Feingold's record on Senate filibusters against judicial nominees. Def.'s Opp'n Exh. 16.

    9. WRTL had used a variety of non-broadcast communications to convey its criticism of Senate filibusters against judicial nominees in the months leading up to August 2004.

    10. WRTL is now paying to broadcast on television and radio a series of advertisements inclusive of those depicted in Exhibits A, B, and C to the complaint and attached as Exhibits A, B, and C hereto, all of which refer to and will continue to refer to and clearly identify Senator Russell Feingold.

    11. The Wisconsin primary for the office for which Senator Feingold is a candidate will occur thirty days after August 15, 2004. The general election will occur November 2, 2004.

2

12. WRTL anticipates that its ongoing advertisements will be considered electioneering communications for purposes of federal statutory and regulatory definitions under 2 U.S.C. § 434(f)(3) and 11 C.F.R. § 100.29 during the period between August 15, 2004, and November 2, 2004.

## LEGAL CONCLUSIONS AND ANALYSIS

Plaintiff Wisconsin Right to Life seeks a judgment declaring portions of the BCRA unconstitutional as applied to it under the facts set forth in its complaint, and it seeks preliminary injunctive relief preventing FEC enforcement of those portions of BCRA against it.

The focus of the litigation is 2 U.S.C. § 441b, which regulates the extent to which such corporations as WRTL may finance and produce "applicable electioneering communications," which are defined at 2 U.S.C. § 434(f)(3) as being "any broadcast, cable, or satellite communication which (I) refers to a clearly identified candidate for Federal office; (II) is made within (aa) 60 days before a general . . . election . . .; or (bb) 30 days before a primary . . . election; and (III) . . . is targeted to the relevant electorate."

In this case, WRTL cites three specific ads, first aired July 26, which contain references to Sen. Russell Feingold, currently the sole Democrat contender for the Senate seat. Complaint 5. As the primary election occurs on September 14 and the general election occurs on November 2, BCRA's (in this case, overlapping) "blackout" periods prohibit the airing of the advertisements from August 15 until November 2. *Id.* at 6.

WRTL's prayer for relief is sweeping, seeking both declaratory and injunctive relief

3

declaring 2 U.S.C. § 441b unconstitutional as applied to "electioneering communications . . . that constitute grass-roots lobbying," and specifically as applied to the three advertisements incorporated in its complaint. Complaint 13. However, the motion before us today concerns only its motion for a preliminary injunction. The standards for the granting of a preliminary injunction are familiar. To prevail, a plaintiff seeking such relief must demonstrate: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable harm if an injunction is not granted; (3) that an injunction would not cause substantial injury to other parties; and (4) that the public interest would be furthered by the injunction. *See, e.g., CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). Plaintiff's showing in the present litigation cannot survive this standard.

First, WRTL has not established that it has a substantial likelihood of success on the merits. Just last year, in *McConnell v. Federal Election Commission*, 124 S. Ct. 619 (2003), the Supreme Court upheld the electioneering communication provisions of the BCRA in their entirety. *Id.* at 686-700. WRTL is correct that in *McConnell* the Court was considering a facial challenge while the current challenge subjects the statute to constitutional analysis in the context of its specific application, but the reasoning of the *McConnell* Court leaves no room for the kind of "as applied" challenge WRTL propounds before us. More specifically, the Court noted that the statute included a "back up" definition of electioneering communications, 2 U.S.C. § 434(f)(3)(A)(I), to take effect only if the primary definition were held to be "constitutionally insufficient." The Court expressly stated that it need not rule on the constitutionality of that back up provision because "*we uphold all applications of the primary definition* and accordingly have no occasion to discuss the backup definition." 124 S.Ct. at 687 n.73 (emphasis added). The

4

Court's deliberate declaration of its ruling as encompassing "*all applications* of the primary definition" suggests little likelihood of success for an "as applied" challenge to some applications of that definition, such as the one plaintiff brings before us.

Furthermore, the Court's deliberate upholding of "all applications" stands in informative contrast to its explicit acknowledgment that other parts of the statute which it upheld against facial challenge might be subject to "as applied" challenges in the future. For example, the Court upheld a Title I provision of BCRA restricting state parties from spending "soft money for federal election activities." 2 U.S.C. § 441i(b). But the Court stated that "as-applied challenges remain available" if some future state party could show that the restriction had become "'so radical in effect as to . . . drive the sound of [the recipient's] voice below the level of notice.'" *Id.* at 677 (brackets in the original) (quoting *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 397 (2000)). Similarly, in upholding the ban on soft money fundraising by national party committees, 2 U.S.C. § 441i(a), the Court noted that "'a nascent or struggling minor party can bring an as-applied challenge" should the ban prevent it from "amassing the resources necessary for effective advocacy.'" *Id.* at 669 (quoting *Buckley v. Valeo*, 424 U.S. 1, 21 (1976)).

Again, in upholding the Title V recordkeeping requirement on broadcasters, the Court noted that the regulated entities "remain free to challenge the provisions, as interpreted by the FCC in regulations, or as otherwise applied." *Id.* at 717. And finally, the Court noted that its ruling upholding against facial challenge the § 201 disclosure provisions of Title II "does not foreclose possible future challenges to particular applications" of that statutory requirement. *Id.* at 692.

While these dicta concerning the possible future facial challenges to other provisions do

5

not preclude the possibility that the Supreme Court might uphold an as-applied challenge to the provisions before us, in the face of the strength of the Court's holding with specific reference to these provisions, we cannot possibly conclude that plaintiff has made out a substantial likelihood of success on the merits.

Our reading of *McConnell* that as-applied challenges to § 441b are foreclosed is but one reason we find little likelihood of success on the merits. The facts suggest that WRTL's advertisements may fit the very type of activity *McConnell* found Congress had a compelling interest in regulating. *Id.* at 695. In *McConnell*, the Court voiced the suspicion of corporate funding of broadcast advertisements just before an election blackout season because such broadcast advertisements "will *often* convey [a] message of support or opposition" regarding candidates. *Id.* at 651, 697, 715. Here, WRTL and WRTL's PAC used other print and electronic media to publicize its filibuster message – a campaign issue – during the months prior to the electioneering blackout period, and only as the blackout period approached did WRTL switch to broadcast media. (See Def.'s Opp. Exh. 4, 16, 18.) This followed the PAC endorsing opponents seeking to unseat a candidate whom WRTL names in its broadcast advertisement (Def.'s Opp. Exh. 10-14), and the PAC announcing as a priority "sending Feingold packing." (Def.'s Opp'n Exh. 4.)

As to the second part of the preliminary injunction standard, we hold that plaintiff has not demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction. Plaintiff relies on the general statement that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Unquestionably, as a general proposition of law, that statement is true.

6

However, in adjudicating entitlement of a plaintiff to a preliminary injunction, we must apply the whole four-part test, which requires us to determine whether the "balance of harms favor[s] plaintiffs." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1137 (D.C. Cir. 1988). That said, the actual limitation on plaintiff's freedom of expression, as protected by the First Amendment, is not nearly so great as plaintiff argues. At least for purposes of a preliminary injunction, the present showing appears to be that plaintiff is not precluded from forwarding its message, or even from exposing the public to the particular advertisements at issue. As we understand it, the BCRA does not prohibit the sort of speech plaintiff would undertake, but only requires that corporations and unions engaging in such speech must channel their spending through political action committees (PACs).[1] In *McConnell*, the Supreme Court noted that though "corporations . . . may not use their general treasury funds to finance electioneering communications, . . . they remain free to organize and administer segregated funds, or PACs, for that purpose." *Id.* at 695. The Court went on to reason that "'the PAC option allows corporate political participation without the temptation to use corporate funds for political influence . . . .'" *Id.* (quoting *Federal Election Commission v. Beaumont*, 123 S. Ct. 2200, 2211 (2003)).

The *Beaumont* decision quoted by the Supreme Court in *McConnell*, while not directly on point as it did not deal with the current statute, is instructive. That case involved a challenge to the regulation of a corporation's political contributions while the present involves regulation of electioneering communications. Nonetheless, the analogy is obvious. In *Beaumont*, the Supreme

---

[1] WRTL also has alternative methods available to communicate its message in addition to using PAC funding for broadcast ads, namely, using print media, such as newspaper or magazine advertisements, press releases, pamphlets, informational mailings, and billboards; using electronic communications, such as e-mailing and internet posting; and placing telephone calls.

7

Court endorsed the constitutional adequacy of "the PAC option." That holding by the Supreme Court not only weighs against the likelihood of success on the merits, but it also suggests that plaintiff has not advanced a strong case of irreparable harm in the absence of a preliminary injunction. Certainly, it suggests that the harm established by plaintiff will not weigh much in the balance against potential harm to others under the third step of the test or against the public interest under the fourth. Therefore, WRTL has failed the second as well as the first step of the four-part test.

Given the absence of merit in plaintiff's case on the first element of the preliminary injunction test and the near-total absence of irreparable harm to the plaintiff under the second, we need not linger long over the third and fourth elements. The harm to the opposing party, the Federal Election Commission, is evident. Everyone agrees that it is the statutory duty of the defendant to enforce the BCRA. If we enter the preliminary injunction, then, to the extent of that injunction, the Commission cannot perform its duty. We hold that an injunction against the performance of its statutory duty constitutes a substantial injury to the Commission, although given plaintiff's failure on the first two elements, we do not consider that showing essential to our denial of the preliminary injunction.

Similarly, since plaintiff has not established any entitlement to a preliminary injunction, it is not essential that we determine that the grant of such an injunction would fail to further the public interest, but for the sake of completion of record for the purposes of any review that might be sought, we do hold that plaintiff has not established that the public interest would be furthered by the injunction. The Supreme Court has already determined that the provisions of the BCRA serve compelling government interests. *See McConnell*, 124 S.Ct. at 695-96. To the extent that

8

the injunction of the proposed application of those provisions interferes with the execution of the statute upheld by the Supreme Court in *McConnell*, the public interest is already established by the Court's holding and by Congress's enactment, and the interference therewith is inherent in the injunction.

In short, plaintiff's case falls far short of the four-part test for the grant of a preliminary injunction. Therefore, we have denied plaintiff's motion. In light of this disposition, we further order that the parties hereto file supplemental memoranda within ten days of the date of this memorandum and order addressing the question whether this matter should be dismissed.

This the 17th day of August, 2004.

_____
United States Circuit Judge

_____
United States District Judge

_____
United States District Judge

9

# Radio Script

Client: Wisconsin Right to Life
Title: "Wedding" :60
Job#: WRL-8136
Date: July 15, 2004

| AUDIO | TALENT |
|---|---|
| We hear church bells up and under... | PASTOR: And who gives this woman to be married to this man?<br><br>BRIDE'S FATHER (rambling):<br>Well, as father of the bride, I certainly could. But instead, I'd like to share a few tips on how to properly install drywall. Now you put the drywall up...<br><br>VO:<br>Sometimes it's just not fair to delay an important decision.<br><br>But in Washington it's happening. A group of Senators is using the filibuster delay tactic to block federal judicial nominees from a simple "yes" or "no" vote. So qualified candidates don't get a chance to serve.<br><br>Yes, it's politics at work, causing gridlock and backing up some of our courts to a state of emergency.<br><br>BRIDE'S FATHER (rambling): Then you get your joint compound and your joint tape and put the tape up over...<br><br>Contact Senators Feingold and Kohl and tell them to oppose the filibuster.<br><br>Visit: BeFair.org. That's BeFair.org<br><br>Paid for by Wisconsin Right to Life (befair.org), which is responsible for the content of this advertising and not authorized by any candidate or candidate's committee. |

Exhibit



# Radio Script

Client: Wisconsin Right to Life
Title: "Loan" :60
Job#: WRL-8136
Date: July 14, 2004

| AUDIO | TALENT |
|---|---|
| | LOAN OFFICER: Welcome Mr. and Mrs. Shulman. We've reviewed your loan application, along with your credit report, the appraisal on the house, the inspections, and, well... |
| | COUPLE: Yes, yes... we're listening. |
| | OFFICER: Well, it all reminds me of a time I went fishing with my father. We were on the Wolf River in Waupaca... |
| | VO: Sometimes it's just not fair to delay an important decision. |
| | But in Washington it's happening. A group of Senators is using the filibuster delay tactic to block federal judicial nominees from a simple "yes" or "no" vote. So qualified candidates aren't getting a chance to serve. |
| | It's politics at work, causing gridlock and backing up some of our courts to a state of emergency. |
| | Contact Senators Feingold and Kohl and tell them to oppose the filibuster. |
| | Visit: BeFair.org |
| | Paid for by Wisconsin Right to Life (befair.org), which is responsible for the content of this advertising and not authorized by any candidate or candidate's committee. |

Exhibit



B

# *TV Script*

Client: Wisconsin Right to Life
Title: "Waiting" :30
Job#: WRL-8136
Date: July 14, 2004

| VIDEO | AUDIO |
|---|---|
| We see vignettes of a middle-aged man being as productive as possible while his professional life is in limbo: | |
| He reads the morning paper<br>He polishes his shoes<br>He checks for mail, which hasn't arrived<br>He scans through his Rolodex<br>He reads his Palm Pilot manual<br>He pays bills | VO:<br>There are a lot of judicial nominees out there who can't go to work.<br><br>Their careers are put on hold because a group of U.S. Senators is filibustering—blocking qualified nominees from a simple "yes" or "no" vote.<br><br>It's politics at work and it's causing gridlock.<br><br>Contact Senators Feingold and Kohl and tell them to oppose the filibuster. |
| SUPER:<br>www.BeFair.org | Visit: BeFair.org |
| 4-SECOND DISCLAIMER (4% or 20 scan lines):<br>Paid for by Wisconsin Right to Life (befair.org), which is responsible for the content of this advertising, not authorized by any candidate or candidate's committee. | WRL REPRESENTATIVE VO:<br>Wisconsin Right to Life is responsible for the content of this advertising. |

Exhibit
C