# United States District Court
# District of Columbia

| | |
|---|---|
| **The Christian Civic League of Maine, Inc.**<br>70 Sewall Street<br>Augusta, ME 04330**,**<br>　　　　　　　　　　*Plaintiff*,<br><br>　　v.<br><br>**Federal Election Commission,**<br>999 E Street, NW<br>Washington, DC 20463**,**<br>　　　　　　　　　　*Defendant*. | **Cause No.** 1:06CV00614 (LFO)<br><br>THREE-JUDGE COURT |

## Responses of the Christian Civic League of Maine, Inc. to Defendants' First Set of Interrogatories

**General Objections**

The Christian Civic League ("CCL") objects to each Interrogatory to the extent that it seeks information that is neither relevant to the parties' claims or defenses in the pending action nor reasonably calculated to lead to the discovery of admissible evidence. By responding, the CCL does not concede that any of the information requested is relevant to this action or admissible at the trial thereof or that any person identified in the responses has information relevant to this action. The CCL reserves any and all objections as to competency, relevance, materiality, privilege, admissibility, or any other grounds on which an objection may be made. The CCL expressly reserves the right to object to further discovery into the subject matter of

**Interrogatory Responses**

these Interrogatories or relating to any person identified in the responses. Any response that inadvertently discloses privileged information is not intended to and shall not be deemed or construed to constitute a waiver of any privilege or right of the CCL. Insofar as a response to an Interrogatory may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a waiver limited to that particular response only.

Subject to and without waiving any of the foregoing General Objections, which are hereby incorporated into each response given below, the CCL responds to the individual interrogatories as follows:

**Interrogatory 1**. List each grassroots lobbying campaign by CCL since January 1, 2004 and the communication methods employed for each campaign, such as radio advertising, television advertising, print advertisements, phone banks, direct mail, mass email, public demonstrations, or any other method of grassroots lobbying.

**Specific Objection:** CCL objects as to relevance. Whether CCL's advertisement fits the type of activity Congress has a compelling interest in regulating depends entirely on the content of the advertisement and not with any previous grassroots lobbying campaign. Without waiving any specific or general objection, CCL responds as follows:

**Answer:** CCL has a state registered political action committee, the Christian Action League (CCL-PAC). Since January, 2004, CCL-PAC worked to defeat passage of state discrimination law that would expand the definition of discrimination. It circulated a petition, asking voters to sign to send the message to the Governor to veto the bill. The issue was mentioned on CCL's radio program. CCL distributed flyers and handouts. The executive director spoke at colleges.

**Interrogatory 2.** Identify and explain each reason why CCL considers other means of communication less effective than radio advertising in advocating for the passage of the federal Marriage Protection Amendment Act.

**Specific Objections**: CCL objects as to relevance. It is not the role of government to tell citizens how best to communicate. "The First Amendment protects [CCL's] right not only to advocate [its] cause but also to select what [it] believes to the most effective means for doing so." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

CCL also objects as to relevance because the burden a regulation of speech places on the exercise of First Amendment rights is a matter of law and is not dependent on facts. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

CCL also objects as to relevance because the mode of communication at issue here is not relevant to the issue this case presents. By remanding *Wisconsin Right to Life v. FEC*, 126 S.Ct.1016 (2006) ("*WRTL*"), to the district court, the Supreme Court necessarily implied that there may be "genuine issue ads," *McConnell v. FEC*, 540 U.S. 93, 206 n.88 (2003), that are broadcast by radio within prohibition periods. Accordingly, why CCL chose this mode of broadcast is irrelevant. Without waiving any specific or general objection, CCL responds as follows:

**Answer**: CCL considers radio advertising to be the most effective means of communication because it consistently reaches more persons per dollar spent.

**Interrogatory 3.** Identify and explain each reason why other means of communication that CCL has previously employed for grassroots lobbying are expected to be less effective than radio

**Interrogatory Responses** 3

advertising if utilized in CCL's campaign for the federal Marriage Protection Amendment Act.

**Specific Objections:** CCL objects as to relevance. It is not the role of government to tell citizens how best to communicate. "The First Amendment protects [CCL's] right not only to advocate [its] cause but also to select what [it] believes to the most effective means for doing so." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

CCL also objects as to relevance because the burden a regulation of speech places on the exercise of First Amendment rights is a matter of law and is not dependent on facts. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

CCL objects as to relevance because the mode of communication at issue here is not relevant to the issue this case presents. By remanding *Wisconsin Right to Life v. FEC*, 126 S.Ct.1016 (2006) ("*WRTL*"), to the district court, the Supreme Court necessarily implied that there may be "genuine issue ads," *McConnell v. FEC*, 540 U.S. 93, 206 n.88 (2003), that are broadcast by radio within prohibition periods. Accordingly, why CCL chose this mode of broadcast is irrelevant. Without waiving any specific or general objection, CCL responds as follows:

**Answer:** Radio broadcasts reach the most hearers for each dollar spent. CCL has, in fact, employed radio broadcasts as part of its state grassroots lobbying efforts.

**Interrogatory 4.** Identify each reason why CCL is not a "qualified nonprofit corporation" within the meaning of 11 C.F.R. § 114.10.

**Answer:** CCL is not a "qualified nonprofit corporation" within the meaning of 11 C.F.R. § 114.10 because it does not have characteristic 11 C.F.R. § 114.10(c)(2). CCL *can* engage in

**Interrogatory Responses**                                4

business activities, and it does. No written or unwritten bylaw, rule, or policy to which CCL is subject provides that it cannot engage in business activity.

Accordingly, it has "provided goods and services that results in income to the corporation," 11 C.F.R. § 114.10(b)(3)(i)(A) when it has offered books and materials in exchange for a suggested donation. It holds events such as banquets which are likewise providing goods and services or are "[a]dvertising or promotional activity which results in income to the corporation, other than in the form of membership dues or donations." 11 C.F.R. § 114.10(b)(3)(i)(B). CCL also receives advertising revenue from its newspaper, the Record.

CCL does not record income in a such a way that easily discloses whether it has, in fact, "directly or indirectly accept[ed] donations of anything of value from business corporations, or labor organizations," 11 CFR 114.10 (c)(4)(ii). Accordingly, to the best of CCL's knowledge and belief, it has not directly accepted any donations of anything of value from business corporations or if it has, such donations have been small. However, 11 CFR 114.10 (c)(4)(ii) also excludes from qualified nonprofit corporation status a corporation that *indirectly* accepts donations of anything of value from business corporations, and CCL may have received contributions from non-profit corporations who may have received contributions from business corporations. CCL also shares and allocates expenses with an associated entity, the Christian Education League, that does receive donations from business corporations. Because such sharing and allocation may be construed to result in the conclusion that CCL "indirectly accept[s] donations . . . from business corporations," CCL is also not able to certify, in accordance with 11 C.F.R. § 114.10(e)(1)(ii)(B), that it has the characteristic 11 C.F.R. § 114.10(c)(4)(ii).

**Interrogatory Responses**                          5

**Interrogatory 5**. Explain what steps, if any, CCL has taken to determine whether it would be harmed if it could not name Senator Snowe in its planned advertisements.

**Specific Objections:** CCL objects to this interrogatory as vague. The term "steps" could mean studies, focus groups, or internal workings and thought processes of the CCL. Insofar as it seeks information from CCL's inner workings and use of proprietary information, the request is overbroad because it seeks information specifically protected by the First Amendment.

CCL objects as to relevance. It is not the role of government to tell citizens how best to communicate. "The First Amendment protects [CCL's] right not only to advocate [its] cause but also to select what [it] believes to the most effective means for doing so." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

CCL objects as to relevance because the mode of communication at issue here is not relevant to the issue this case presents. By remanding *Wisconsin Right to Life v. FEC*, 126 S.Ct.1016 (2006) ("*WRTL*"), to the district court, the Supreme Court necessarily implied that there may be "genuine issue ads," *McConnell v. FEC*, 540 U.S. 93, 206 n.88 (2003), that name a federal candidate. Accordingly, why CCL chose to name Senator Snowe is irrelevant.

Limiting the meaning of "steps" to processes not subject to the above objections, and without waiving any specific or general objection, CCL responds as follows:

**Answer**: CCL took no surveys or conducted no focus groups and took no other steps to determine whether it would be harmed if it could not name Senator Snowe in its planned advertisements.

**Interrogatory 6.** For each donation of anything of value that CCL has received from a business

**Interrogatory Responses**                6

corporation or labor organization since January 1, 2004, list the date, amount, and name and address of the source of the donation.

**Specific Objection**: CCL objects to this request as requiring disclosure of information that the government has no compelling interest in knowing. It specifically requests that such information be subject to a protective order. Without waiving any specific or general objection,, CCL responds as follows:

**Answer:** CCL does not record income in a such a way that easily discloses whether it has, in fact, directly or indirectly accepted donations from business corporations or labor organizations. CCL believes any such direct donations to have been small but cannot specify them. CCL may have received contributions from non-profit corporations who may have received contributions from business corporations. CCL also shares and allocates expenses with an associated entity, the Christian Education League, that does receive donations from business corporations. CCL cannot specify any indirect donations from business corporations or labor organizations.

**Interrogatory 7** For each time an individual has donated in excess of $1000 to CCL over the course of a calendar year in 2004, 2005, or to date in 2006, list the amount the individual donated in that calendar year.

**Specific Objection:** Disclosing such records is an infringement on the rights of speech and association without being adequately tailored to a commensurately compelling government interest. Without waiving any specific or general objection, CCL responds as follows:

**Answer:** *See attached* **Exhibit A** (nominated as "#7")

**Interrogatory Responses**                7

**Interrogatory 8**. List the amount and the name and address of the source of each contribution from a corporation that has been pledged to pay for CCL's campaign for the passage of the federal Marriage Protection Amendment Act.

**Specific Objection:**

**Answer:** No corporation has pledged to pay for CCL's efforts for the passage of the federal Marriage Protection Amendment.

**Interrogatory 9**. For each individual who has pledged to contribute in excess of $1000 to CCL to pay for CCL's campaign for the passage of the federal Marriage Protection Amendment Act, list the amount that each individual has pledged.

**Specific Objection:**

**Answer:** *See attached* **Exhibit B** (nominated as "# 9")

**Interrogatory 10**. List the amount and percentage of CCL's receipts that came from business corporations or labor organizations in 2004, 2005, and to date in 2006.

**Specific Objection:**

**Answer:** CCL does not record income in a such a way that easily discloses whether it has, in fact, "directly or indirectly accept[ed] donations of anything of value from business corporations, or labor organizations," 11 CFR 114.10 (c)(4)(ii). Accordingly, to the best of CCL's knowledge and belief, it has not directly accepted any donations of anything of value from business corporations or if it has, such donations have been small.

**Interrogatory Responses**                 8

**Interrogatory 11**. List each federal candidate that CCL has endorsed since January 1, 2004.

**Specific Objection:** CCL objects to this interrogatory as vague. The term "endorse" could mean support that is not encompassed with the government's compelling interest in disclosure. As limited to the constitutionally required construction for disclosure of expressly advocating the election or defeat of a clearly identified candidate, and without waiving this specific or general objection, CCL responds as follows:

**Answer:** CCL has endorsed no federal candidate since January 1, 2004.

**Interrogatory 12**. State whether CCL has ever opposed Senator Olympia Snowe or endorsed an opponent of hers in an election for federal office. If CCL has opposed Senator Snowe or endorsed an opponent of hers, identify each election campaign that CCL opposed Senator Snowe and each election campaign in which CCL endorsed Senator Snowe's opponent.

**Specific Objections:** CCL objects as to relevance. Only the content of CCL's advertisement as provided in its Verified Complaint is relevant to this action.

　　CCL objects to as vague the terms "opposed" and "endorsed." If not limited to communications that expressly advocate the election or defeat of a clearly identified candidate, such terms ask for information that the government has no compelling interest in gathering. If limited in meaning to expressly advocate the election or defeat of a clearly identified candidate, and without waiving this specific or general objection, CCL responds as follows:

**Answer:** CCL has not "opposed" Senator Olympia Snowe or "endorsed" an opponent of hers in an election for federal office.

**Interrogatory 13.** Separately list the amount that CCL disbursed in 2004 and 2005 in order to advocate for against a) candidates for state or local office; and b) candidates for federal office.

**Specific Objections:** CCL objects as to relevance. Only the content of CCL's advertisement as provided in its Verified Complaint is relevant to this action.

CCL objects as to relevance as to candidates for state or local office. The FECA provisions at issue in this matter operate completely separately from state regulations which would apply to such elections.

CCL objects to as vague the phrase "advocate for or against." If not limited to communications that expressly advocate the election or defeat of a clearly identified candidate, such terms ask for information that the government has no compelling interest in gathering. If limited in meaning to expressly advocate the election or defeat of a clearly identified candidate, and without waiving these specific or general objections, CCL responds as follows:

**Answer:** a) CCL has spent no amount in order to expressly advocate the election or defeat of a clearly identified candidate for state or local office.

b) CCL has spent no amount in order to expressly advocate the election or defeat of a clearly identified candidate for federal office.