UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTIAN CIVIC LEAGUE OF MAINE, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-0614 (JWR, LFO, CKK) (Three-Judge Court) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | MOTION |
| Defendant, | ) ) | |
| and | ) ) | |
| SEN. JOHN McCAIN *et al.*, | ) ) | |
| Intervening Defendants. | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S
MOTION TO DISMISS PLAINTIFF'S CLAIMS
REGARDING HYPOTHETICAL "GRASS ROOTS LOBBYING"**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), defendant Federal Election Commission ("Commission" or "FEC") hereby moves to dismiss the general claims of plaintiff Christian Civic League of Maine ("CCL") regarding broad classes of future, hypothetical "grass-roots lobbying," specifically all communications beyond the "Crossroads" advertisement attached to plaintiff's Complaint. Such claims are not ripe, and are too speculative and hypothetical to be justiciable under Article III. Even if they were justiciable, the Court should exercise its broad discretion to withhold declaratory judgment on those claims. Pursuant to LCvR 7(a) and (c) (D.D.C.), a Memorandum of Points and Authorities and a proposed Order are submitted herewith.

Respectfully submitted,

_____/s/_____
Lawrence H. Norton
General Counsel

_____/s/_____
Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

_____/s/_____
David Kolker
Assistant General Counsel
(D.C. Bar # 394558)

_____/s/_____
Harry J. Summers
Attorney

_____/s/_____
Kevin Deeley
Attorney

_____/s/_____
Steven N. Hajjar
Attorney

FOR THE DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
June 12, 2006                                     (202) 694-1650

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTIAN CIVIC LEAGUE OF MAINE, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-0614 (JWR, LFO, CKK) (Three-Judge Court) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | MEMORANDUM |
| Defendant, | ) ) | |
| and | ) ) | |
| SEN. JOHN McCAIN *et al.*, | ) ) | |
| Intervening Defendants. | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIMS
REGARDING HYPOTHETICAL "GRASS ROOTS LOBBYING"**

Defendant Federal Election Commission ("Commission" or "FEC") moves to dismiss the general claims of plaintiff Christian Civic League of Maine ("CCL") regarding broad classes of future, hypothetical "grass-roots lobbying," specifically all communications beyond the "Crossroads" advertisement attached to plaintiff's Complaint. Such claims are not ripe, and are too speculative and hypothetical to be justiciable under Article III. Even if they were justiciable, the Court should exercise its broad discretion to withhold declaratory judgment on those claims. Because the Commission hereby moves to dismiss such claims pursuant to Fed. R. Civ. P. 12(b)(1) & (b)(6), it does not answer the allegations stemming from those claims in its Answer

filed today.  However, the Commission does answer plaintiff's claims regarding the "Crossroads" advertisement attached to its Complaint.  See FEC's Answer, filed June 12, 2006.

I.   **CCL'S GENERAL CLAIMS ABOUT HYPOTHETICAL "GRASS-ROOTS LOBBYING" ADVERTISING ARE NOT JUSTICIABLE**

   A.   **CCL's General Claims Are Not Ripe**

In this case, CCL has sought an exemption from a provision in the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155, 116 Stat. 81, 91-92 (2002), which prohibits corporations from using general treasury funds to pay for broadcast communications — called "electioneering communications" — that identify a candidate for federal office during defined periods prior to federal elections.  In particular, CCL has sought declaratory and injunctive relief with regard to the "Crossroads" advertisement about the proposed federal marriage amendment that is attached as Exhibit A to its Complaint, which was to be run prior to the upcoming primary election in Maine.  Verified Complaint, filed Apr. 3, 2006, ¶ 15.

CCL has also sought such relief for "materially similar grass-roots lobbying ads" subject to the electioneering communication restrictions that CCL claims it intends to run in the future about "a range of issues ... such as partial birth abortion, permissive abortion, abortion clinic regulations, parental control of their children's education, regulation of sexual predators, legislation normalizing same sex relations, gambling, limiting the government's power to raise taxes and the freedom to advance its issues in the public forum."  Id. ¶ 16.  Thus, the Complaint's Prayer for Relief requests a declaratory judgment "as applied to electioneering communications by CCL that constitute grass-roots lobbying" (Prayer ¶ 1) and a preliminary and permanent injunction "for any electioneering communications by CCL that constitute grass-roots

2

lobbying" (Prayer ¶ 3).[1]  However, discovery conducted so far in the case demonstrates that CCL in fact has no concrete or specific plans to run any future broadcast advertisements about the Federal Marriage Amendment or any other issue.  See Deposition of Michael Heath, Exh. A to FEC's Opposition to Plaintiff's Motion for a Preliminary Injunction, filed April 17, 2006, at 74-75, 82-83.

In denying a preliminary injunction, this Court specifically addressed CCL's request for a preliminary injunction as to broadcast ads other than the one attached as Exhibit A to the complaint.  The Court noted that CCL had requested a preliminary injunction that was "unlimited time-wise [and] would encompass 'any electioneering communications by [the League] that constitute grass-roots lobbying.'"  Memorandum Opinion (May 9, 2006) at 3 n.1 (quoting Verified Complaint, Prayer for Relief).  The Court then pointed out that CCL "fails to define 'grass-roots lobbying' (other than as including its proposed advertisement) or to identify any necessity for the application of such a broader injunction."  Mem. Op. at 3 n.1.  Accordingly, the Court specifically found that CCL's "request for the broader preliminary injunction is unwarranted."  Id.  The Court then noted that the rest of its opinion would address CCL's motion "only insofar" as it sought an injunction for the "Crossroads" advertisement attached as Exhibit A to be run prior to the June 13, 2006 primary election in Maine.  Id.

---

[1]  Both counts of CCL's Complaint include specific requests for such relief.  See id. ¶ 52 (CCL's "materially similar future advertisements" will be "bona fide grass roots lobbying"); ¶ 57 ("[a]s applied to grass-roots lobbying broadcasts" and the ad attached as Exhibit A, BCRA § 203 is "not narrowly tailored to a compelling governmental interest"); ¶ 58 ("[a]s applied to grass-roots lobbying broadcasts" and the ad attached as Exhibit A, BCRA § 203 "unconstitutionally burdens the rights of free speech, free association, and petitioning the government, all in violation of the First Amendment"); ¶ 64 ("[a]s applied to disbursements from a segregated bank account under 2 U.S.C. § 434(f) for grass-roots lobbying broadcasts" and the ad attached as Exhibit A, BCRA § 203 is "not narrowly tailored to a compelling governmental interest and so it unconstitutionally burdens the rights of free speech, free association, and petitioning the government, all in violation of the First Amendment").

The Court's disposition of CCL's request for a preliminary injunction for this broad class of hypothetical communications — including the Court's observation that CCL has failed to define what its "grass-roots lobbying" would entail or to show why it needs such broad relief without a time limit — is instructive as to CCL's corresponding claims on the merits. Such claims are not ripe.

> [One] component of justiciability which is particularly relevant for preenforcement review of statutes is "ripeness," which focuses on the timing of the action rather than on the parties seeking to bring it. In deciding whether a case is ripe for adjudication, federal courts generally consider the hardship to the parties of withholding court resolution ... and the fitness of the issues for judicial resolution... See Abbott Laboratories [v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)]. By refusing to hear disputes which are not yet ripe, federal courts avoid becoming entangled in "abstract disagreements," [Abbott Laboratories, 387 U.S. at 148], enhance judicial economy, and ensure that a record adequate to support an informed decision exists when the case is heard.

Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997). These concerns apply fully here. In this pre-enforcement review of BCRA's application to undefined hypothetical advertisements that CCL might some day want to air, CCL invites the court to address just such an "abstract disagreement," and to resolve a constitutional issue without a "record adequate to support an informed decision." Indeed, there is no record at all about any particular future advertisements.

In Renne v. Geary, 501 U.S. 312 (1991), the Supreme Court found a lack of ripeness in a comparable constitutional challenge about restrictions on political speech. In Renne, plaintiffs challenged a state constitutional provision barring political parties from endorsing candidates for nonpartisan office.

> We also discern no ripe controversy in the allegations that respondents desire to endorse candidates in future elections.… Respondents do not allege an intention to endorse any particular candidate, nor that a candidate wants to include a party's or committee member's endorsement in a candidate statement. We possess no

4

> factual record of an actual or imminent application of [the state constitutional provision] sufficient to present the constitutional issues in "clean-cut and concrete form." [Citations omitted.] We do not know the nature of the endorsement, how it would be publicized, or the precise language petitioners might delete from the voter pamphlet [that they distribute]. To the extent respondents allege that a committee or committee member wishes to "support" or "oppose" a candidate other than through endorsements, they do not specify what form that support or opposition would take.

Id. at 321-22. Similarly, in this case the Court has no concrete factual record as to what candidate(s) CCL may wish to identify in future broadcast ads, what the text of such ads might be, what legislative issues they might discuss, where or when the ads might run, or the nature of the electoral environment in which the ads might air. Without such concrete information, the Court has no facts to which it can apply the law; it can only opine on "abstract disagreements." Abbott Laboratories, 387 U.S. at 148. Thus, the Court should dismiss CCL's claims concerning hypothetical grass-roots lobbying in the future.

    **B.    CCL's General Claims Request An Advisory Opinion**

CCL's claims about its unspecified future activities are so speculative and hypothetical that they amount to a request for an advisory opinion, not a justiciable "case or controversy" under Article III. The "case or controversy" requirement is "no less strict" in actions seeking declaratory judgments than in other actions, and "[i]n order to meet this threshold requirement, there must be a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Federal Express Corp. v. Air Line Pilots Ass'n, 67 F.3d 961, 963-64 (D.C. Cir. 1995) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)). The "'federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" Rafferty v. Judicial Council for the District of Columbia, 131 F.3d 219, 221 (D.C. Cir. 1997) (quoting United Public Workers v. Mitchell, 330 U.S. 75, 89 (1947)). See also Lewis

5

v. Continental Bank Corp., 494 U.S. 472, 477 (1990) ("Article III ... confines … [the courts] to resolving real and substantive controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). It is "well established that Article III requires a plaintiff seeking declaratory judgment to demonstrate a possibility of future injury which is of 'sufficient immediacy and reality.'" Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1137 n.3 (D.C. Cir. 1989) (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)).

In Golden, the plaintiff had sought a declaratory judgment as to the constitutionality of a state statute making it a crime to distribute anonymous literature in connection with an election campaign. Even in the context of public speech about elections, the Supreme Court concluded that it was

> not enough to say, as did the District Court, that [plaintiff had] a "further and far broader right to a general adjudication of unconstitutionality ... (in) (h)is own interest as well as that of others who would with like anonymity practise free speech in a political environment..." The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance.

Golden, 394 U.S. at 109-10 (citation omitted). In the current case, CCL has made similarly vague, hypothetical assertions about purported "grass-roots lobbying" that it may do in the future, as well as the supposed need to adjudicate those claims in order to serve its future interests. See Verified Complaint ¶¶ 15-16. However, like the plaintiff in Golden, 394 U.S. at 109, CCL has failed to present its broad claims "in the context of a specific live grievance."

6

II. **THIS COURT SHOULD EXERCISE ITS BROAD DISCRETION NOT TO CONSIDER PLAINTIFF'S GENERAL CLAIMS ABOUT HYPOTHETICAL "GRASS-ROOTS LOBBYING" ADVERTISING**

Even if CCL's claims were justiciable under Article III, this Court has broad discretion to withhold a declaratory judgment, and it should exercise that discretion to decline to entertain plaintiff's constitutional claims about hypothetical future conduct.

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.… Congress sought to place a remedial arrow in the district court's quiver: it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

Wilton v. Seven Falls Co., 515 U.S. 277, 286, 288 (1995). See Jackson v. Culinary School of Washington, Ltd., 59 F.3d 254, 256 (D.C. Cir. 1995) ("The Supreme Court in Wilton took great pains to emphasize the singular breadth of the district court's discretion to withhold declaratory judgment.").

"Where it is uncertain that declaratory relief will benefit the party alleging injury, the court will normally refrain from exercising its equitable powers," and "[t]his is especially true where the court can avoid the premature adjudication of constitutional issues." Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1020 (D.C. Cir. 1991). Since we do not know that CCL will even run another advertisement, there is no reason to provide declaratory relief because it is uncertain that such relief is necessary or will benefit the plaintiff. In fact, "'[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.'... It has long been the Court's 'considered practice not to decide abstract, hypothetical or contingent questions ... or to decide any constitutional question in advance of the necessity for its decision....'" Clinton

7

v. Jones, 520 U.S. 681, 690 n.11 (1997) (citations omitted, second ellipsis added).  CCL's speculative claims regarding future advertisements raise "a constitutional issue of first impression" — whether the electioneering communications provisions can constitutionally be applied to an as yet undefined class of "grass-roots lobbying" advertisements — and the Court "should wait to decide [that] issue until it is squarely presented."  Penthouse Int'l, 939 F.2d at 1020.

## CONCLUSION

For the reasons above, the Court should dismiss plaintiff's claims as to any category of "grass roots lobbying" beyond the "Crossroads" advertisement attached to its Complaint.

Respectfully submitted,

_____/s/_____
Lawrence H. Norton
General Counsel


_____/s/_____
Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)


_____/s/_____
David Kolker
Assistant General Counsel
(D.C. Bar # 394558)


_____/s/_____
Harry J. Summers
Attorney

8

        _____/s/_____
Kevin Deeley
Attorney

        _____/s/_____
Steven N. Hajjar
Attorney

FOR THE DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, D.C. 20463
June 12, 2006        (202) 694-1650

9