**United States District Court**
**District of Columbia**

| | |
|---|---|
| **The Christian Civic League of Maine, Inc.** *Plaintiff,* | |
| *v.* | Cause No. **1:06CV00614** (JWR, LFO, CKK) |
| **Federal Election Commission,** *Defendant,* | |
| *and* | THREE-JUDGE COURT |
| **John McCain et al.,** *Intervenor-Defendants.* | |

## Plaintiff's Response to the Court's Suggestion of Mootness

In its June 23, 2006 Order, the Court [docket # 41], the Court ordered the Plaintiff to "show cause why the 'Crossroads' portion of this case should not be dismissed as moot." In general, there is a live controversy as to declaratory judgment with respect to (a) the League's specific "Crossroads" ad that it intended to run after May 14, 2006 and (b) genuine grass-roots lobbying more generally, including (without limitation) the materially similar ads that the League intends to run in the future. Verified Complaint ("VC") ¶ 15.

The declaratory judgment action remains live as to the ad proposed to be run in May because of the exception to the mootness doctrine for matters that are capable of repetition yet evading review. *See supra.* If this Court declares that the prohibition is unconstitutional as to the Crossroads ad and materially similar ads, then an appropriate prospective injunction should be issued. And if this Court declares that the prohibition is unconstitutional as applied to grassroots lobbying more generally, under a court-adopted rule along the lines of what the Supreme Court

did in *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986) (recognizing an exception to the prohibition on corporate expenditures for express advocacy for *MCFL*-corporations), then an appropriate prospective injunction should issue.

## I. The League's Claims Regarding the "Crossroads" Ad Are Not Moot.

### A. Election-Related Cases Are Rarely Mooted.

While the June, 2006 Senate vote on the Marriage Protection Amendment (S.J. Res. 1) is past, this case is not moot because the League intends to do similar grass-roots lobbying in the future, with a reasonable likelihood that the need will recur during a prohibition period. VC ¶ 16.[1] Further, election cases are classic examples of the exception to the mootness doctrine for cases that are capable of repetition yet evading review. *See Norman v. Reed*, 502 U.S. 279, 287-88 (1992); *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988); *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978); *California Pro-Life Council v. Getman*, 328 F.3d 1088, 1095 n.4 (9th Cir. 2003); *Majors v. Abell*, 317 F.3d 719, 722 (7th Cir. 2003); *Florida Right to Life v. Lamar*, 273 F.3d 1318, 1324 n.6 (11th Cir. 2001); *Virginia Soc'y for Human Life v. FEC*, 263 F.3d 379, 390 n.3 (4th Cir. 2001); *Stewart v. Taylor*, 104 F.3d 965, 969-70 (7th Cir.1997); *New Hampshire Right to Life v. Gardner,* 99 F.3d 8, 18 (1st Cir.1996); *Kansans for Life v. Gaede*, 38 F. Supp. 2d 928, 932 (D. Kan. 1999).

---

[1]In addition to ongoing debate over a federal amendment protecting traditional marriage, the League has an interest in grass-roots lobbying as to a broad range of currently hot social issues that the legislative and executive branch often deal with in periods before elections, including  partial birth abortion, permissive abortion, abortion clinic regulations, parental control of their children's education, regulation of sexual predators, legislation normalizing same sex relations, gambling, limiting the government's power to raise taxes and the freedom to advance its issues in the public forum. *Id.*

**B.      The League's Claims Regarding the "Crossroads" Ad Are Not Moot.**

**1.      The League Must Show That the Injury Caused by the Law is Capable of Repetition Yet Evading Review.**

The Court expresses concern that "the 'Crossroads' advertisement portion of the case," specifically, does not qualify under the "capable of repetition yet evading review" exception to mootness because it is not capable of repetition. June 23, 2006 Order ("Order") at 1. But what must be "capable of repetition" to fit within the exception to mootness is not the running of the Crossroads ad itself: "the capable-of-repetition doctrine applies only in exceptional situations,[2] and generally only where the named plaintiff can make a reasonable showing that he will again be *subjected to the alleged illegality*." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (U.S. 1983) (emphasis added). Election-related cases are exceptional situations, *supra*, and the League has reasonably shown that it will again be subjected to violation of its First Amendment rights by the electioneering communication prohibition.

In *De Funis v. Odegaard*, because after filing suit challenging allegedly unconstitutional admissions criteria, a prospective law student was admitted and therefore "*will never again be required to run the gantlet of the Law School's admission process* . . . the question [was] certainly not 'capable of repetition' so far as he is concerned." 416 U.S. 312, 319 (U.S. 1974) (citation omitted) (emphasis added). The claim was moot in *De Funis* because the plaintiff could not again be subject to the alleged illegality of the admissions process, not simply because his application had apparently been accepted. The alleged illegality was the process, not the rejection of any particular application, and hence, his standing did not hinge on that single application.

In *Moore v. Ogilvie*, even though the election had passed and therefore relief could not be

---

[2]As noted *supra*, election cases are such  "exceptional situations."

granted as applied to the particular application for certification for the Illinois ballot that gave rise to the claim, because "the burden . . . allowed to be placed on the nomination of candidates for statewide offices remains and controls future elections . . . The problem is therefore 'capable of repetition, yet evading review . . .'" 394 U.S. 814, 816 (U.S. 1969) (citation omitted). If the original application for certification itself had to be "capable of repetition," then Moore's claims would have been moot.

Similarly, the claims of  Jane Roe and the class she represented would have been moot if the particular pregnancy she experienced when filing her claim in March 1970 had to be "capable of repetition." Indeed, the state made exactly this argument, pointing out that "she and all other members of her class are no longer subject to any 1970 pregnancy." *Roe v. Wade*, 410 U.S. 113, 125 (1973). But it was not the specific pregnancies giving rise to the suit that met the requirements of the "capable of repetition yet evading review" exception to mootness. The claims were not moot, despite the natural termination of the 1970 pregnancies, because the restrictions on terminating a pregnancy remained in force, and even though Roe was not again pregnant yet, "[p]regnancy often comes more than once to the same woman," *id.* at 125, reasonably showing that Roe and the class would again be *subjected to the alleged illegality* of the restrictions Jane Roe and her class challenged.[3]

Likewise, the League need not show that the Crossroads ad itself is capable of repetition but a reasonable showing that it would again be subjected to the alleged illegality of restrictions

---

[3]Claims regarding pregnancies and elections both tend to evade review because the normal period of pregnancy, elections, and legislative votes "is so short that [they] will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy [and election-related] litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied." *Id.*

posed by the electioneering communication prohibition suffices to except claims regarding that ad from otherwise becoming moot.

### a. The League Will Very Likely Again be Subjected to the Electioneering Communication Prohibition.

The League can make a reasonable showing that it will again be subjected to the alleged illegality of being prohibited from using general funds for broadcast of its grassroots lobbying advertisements during key legislative periods.[4]

### i. The Offending Statute Remains in Force and Applicable.

The electioneering communication prohibition undoubtedly applied to the broadcast of the Crossroads ad the League ran until May 14 and would have continued running had it won an injunction protecting it from an enforcement action. The prohibition is plainly applicable to the Crossroads ad and any "targeted" broadcast ad aired during the blackout periods. There are no regulatory exceptions to the electioneering communication prohibition for anything even purporting to be grassroots lobbying and the League "is subject to litigation challenging the legality of their actions if contrary to the Commission's rule" by a private party and without an FEC enforcement decision. *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (noting that 2 U.S.C. § 437g(a)(8) so provides).

---

[4]The illegality of the electioneering communication prohibition alleged by the League was not limited to the Crossroads ad. Its complaint was not limited to the Crossroads ad, even with respect to the intended broadcast period that expired with the Senate vote in early June. VC ¶ 13 ("CCL intends to run the ad and/or materially similar ads between May 10 and early June, including within the blackout periods, if CCL obtains the relief sought herein.").

**Plaintiff's Response to**
**Court's Show Cause Order**                5

ii.    **The League Will Likely Find Itself in the Path of the Law Again.**

The League will very likely find its grassroots lobbying activities at odds with the electioneering communication prohibition again. The record shows that the League has in the past, in addition to the Crossroads ad, run a grassroots lobbying campaign, including radio ads, encouraging people in Maine to contact their Senators by name and ask them to support traditional marriage. Heath Decl. ¶ 8.

It has alleged facts about the form, timing and placement of ads that it intends to run in the future. It has alleged the intent to pay for communications that will "referenc[e] a clearly identified candidate," will be run "within the electioneering communication prohibition period before the next general election and . . . before future primary and general elections in Maine when there are pending matters in the legislative or executive branch," VC ¶ 16, and would likely be publicized by radio or television broadcast. *Heath Decl.* ¶¶ 18-19. The list of issues the League is demonstrably interested in publicly addressing, *see* VC ¶ 16, exponentially increases the likelihood that the League will again run a grassroots lobbying campaign subject to the electioneering communication prohibition.

**Conclusion**

Election-related cases are classic examples of exceptions to mootness because they are "capable of repetition yet evading review." Such cases can evade review because of the inherently short life cycle of an election. Properly expressed, the "capable of repetition" portion of the exception requires the plaintiff to make a reasonable showing that he will again be subjected to the alleged illegality, not necessarily by way of the same action that originally gave rise to the complaint.

**Plaintiff's Response to Court's Show Cause Order**                    6

The League's claims regarding the Crossroads ad are not moot because it has shown that it will again be subjected to the alleged illegality of the application of the electioneering communication prohibition.

Dated June 30, 2006

Respectfully submitted,

_____
M. Miller Baker, D.C. Bar # 444736
Michael S. Nadel, D.C. Bar # 470144
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, NW
Washington, D.C. 20005-3096
202/756-8000 telephone
202/756-8087 facsimile
*Local Counsel for Plaintiff*

/s/ James Bopp, Jr.
_____
James Bopp, Jr., D.C. Bar #CO0041
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN  47807
812/232-2434 telephone
812/234-3685 facsimile
*Lead Counsel for Plaintiff*

**Plaintiff's Response to**
**Court's Show Cause Order**          7