UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTIAN CIVIC LEAGUE OF MAINE, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-0614 (JWR, LFO, CKK) (Three-Judge Court) |
| v. | ) ) | MEMORANDUM OF LAW |
| FEDERAL ELECTION COMMISSION, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| SEN. JOHN McCAIN *et al.*, | ) ) | |
| Intervenor-Defendants. | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S MEMORANDUM
OF LAW IN RESPONSE TO COURT'S JUNE 23, 2006 ORDER**

The Court's order of June 23, 2006, required the Federal Election Commission ("FEC" or "Commission) to file a memorandum addressing the mootness of the "Crossroads" portion of this case, as well as to file any reply in support of its Motion to Dismiss Plaintiff's Claims Regarding Hypothetical Grass Roots Lobbying, by July 7, 2006. The Commission herein complies.

**I.   IT IS A CLOSE QUESTION WHETHER CCL'S PROPOSED "CROSSROADS" COMMUNICATION PRESENTS A LIVE CONTROVERSY FOR THIS COURT TO ADJUDICATE**

Under the "case or controversy" requirement of Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). A moot issue is not an "actual, ongoing controvers[y]." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180 (2000) ("Constitution's case-or-controversy

1

limitation on federal judicial authority, Art. III, § 2, underpins … our mootness jurisprudence"); Spirit of the Sage Council v. Norton, 411 F.3d 225, 230 (D.C. Cir. 2005) (accord). "A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Pharmachemie B.V. v. Barr Labs., Inc., 276 F.3d 627, 631 (D.C. Cir. 2002) (internal citation omitted).

  **A.** **Mootness**

  CCL no longer has any plans to run the "Crossroads" advertisement it allegedly intended to air from May 10 through early June 2006. When it filed its complaint, CCL alleged that it intended to finance the Crossroads advertisement with corporate treasury funds during the 30-day period before the June 13, 2006 Maine primary in which Senator Olympia Snowe was seeking her party's nomination. Verified Complaint ¶¶ 11-13 & Exhibit A thereto. CCL further alleged that it planned to do so for the purpose of influencing the votes of Senators Snowe and Collins regarding the Marriage Protection Amendment. Id. at ¶ 11. However, the Senate voted on the Marriage Protection Amendment on June 7, 2006, and CCL concedes that it currently has no specific plans to run any grassroots lobbying advertisements between now and election day, November 7, 2006. See Deposition of Michael Heath, Exh. A to FEC's Opposition to Plaintiff's Motion for a Preliminary Injunction, filed April 17, 2006, at 74-75, 82-83; see also Joint Report of the Parties Pursuant to Order of June 5, 2006, at 2.

  It is now July 2006, and the issue whether it was constitutional to apply the electioneering communications provision to the Crossroads advertisement that CCL proposed to broadcast from May 10 until the Senate voted on the Marriage Amendment is no longer an actual, ongoing controversy. Moreover, because CCL chose not to run its advertisements during the

electioneering communication time windows, it now faces no possibility of any future Commission enforcement proceedings against it for ads it never ran.

### B. The "Capable of Repetition, Yet Evading Review" Exception

The Supreme Court has recognized an exception to the mootness doctrine for situations that are "capable of repetition, yet evading review." See Southern Pacific Terminal Co. v. ICC, 219 U.S. 498 (1911), and its progeny. The wrong or issue raised by a party must satisfy "both prongs" of this test to come within "this narrow exception." Pharmachemie B.V., 276 F.3d at 633. "[T]he capable of repetition doctrine applies only in exceptional situations, and generally only where the named plaintiffs can make a reasonable showing that [they] will again be subjected to the alleged illegality." Los Angeles v. Lyons, 461 U.S. 95, 109 (1983). Although the D.C. Circuit has observed that "[c]hallenges to rules governing elections are the archetypal cases for application of the [the capable-of-repetition] exception," LaRouche v. Fowler, 152 F.3d 974, 978 (D.C. Cir. 1998), the capable of repetition analysis is fact specific and the electoral subject matter of the challenge does not alone resolve whether an alleged injury qualifies for the exception. See, e.g., Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173 (1979) (dismissing as moot challenge by petitioner to settlement agreement between Chicago Elections Board and respondent setting signature requirement for ballot access); Hall v. Beals, 396 U.S. 45 (1969) (dismissing as moot a challenge to Colorado election provision subsequently amended by legislature). As discussed below, it is a close question whether CCL's as-applied challenge regarding its planned "Crossroads" advertisement falls within the "capable of repetition, yet evading review" exception.

Under the first prong of the test, for an alleged wrong to be considered "capable of repetition," "there must be a 'reasonable expectation' or 'demonstrated probability' that the same

3

controversy will recur involving the same complaining party." Murphy v. Hunt, 455 U.S. 478, 482 (1982). Accord, e.g., First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 774 (1978); Spirit of the Sage Council, 411 F.3d at 229-30. The alleged wrong at issue "must be defined in terms of the precise controversy it spawns" and "in terms of the legal questions it presents for decision." PETA v. Gittens, 396 F.3d 416, 422-23 (D.C. Cir. 2005). The Supreme Court "has never held that a mere physical or theoretical possibility was sufficient to satisfy the test…. If this were true, virtually any matter of short duration would be reviewable." Murphy, 455 U.S. at 482.

"To invoke this exception, petitioners have the burden to demonstrate that these requirements are met." Public Utils. Comm'n of Calif. v. FERC, 236 F.3d 708, 714 (D.C. Cir. 2001); accord Southern Co. Servs., Inc. v. FERC, 416 F.3d 39, 43 (D.C. Cir. 2005). CCL concedes that it will not run the Crossroads ad between now and election day, and that it does not have any concrete or specific plans to run any advertisements about the Marriage Protection Amendment or any other issue in the future. See Heath Dep. at 74-75, 82-83. CCL's failure to allege that it has any such plans "is a critical deficiency as the test requires more than a theoretical possibility that the challenged action would reoccur." Blocker v. SBA, 916 F.Supp. 37, 40 n.2 (D.D.C. 1996) (internal quotation marks omitted); see also Independent Gasoline Marketers Council v. Department of Energy, 511 F.Supp. 595, 599 (D.D.C. 1981) ("A mere speculative possibility of repetition is not sufficient").

Although as-applied challenges sometimes can fall within this exception, Storer v. Brown, 415 U.S. 724, 737 n.8 (1974),[1] there are many material circumstances in this case that

---

[1] In Storer, 415 U.S. at 737 n.8, the Court found the exception applicable because the "construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges…." In this case,

4

would have to happen again for the "the same controversy" with CCL to recur "in terms of the legal questions it presents for decision," PETA, 396 F.3d at 422-23. For example, when this Court denied CCL's request for a preliminary injunction, it found relevant to the legal determination of whether CCL's advertising was of the type at which the statute was properly directed the "enthusiastic note" sounded by the League's own newsletter regarding a potential challenger to Senator Snowe. "The question is, what does it mean for "the same controversy" to recur? The level of generality with which one describes the controversy will often determine the answer." Spirit of the Sage Council, 411 F.3d at 230. The Court's reasoning in denying a preliminary injunction suggests that in this case, for the same controversy to recur, there would have to be a "reasonable expectation" that CCL will plan to run an ad during an electioneering communication window involving another impending vote on a proposed marriage amendment that mentions a candidate for federal office about whose potential challenger CCL is on record having expressed enthusiasm. At this time, however, it is speculative when there may be another vote on a proposed marriage amendment, let alone a vote during an electioneering communication window. To the extent that it is conjectural whether these events will recur together, it is speculative whether an as-applied constitutional challenge would present the same controversy. See PETA, 396 F.3d at 424 (in "fact-specific" First Amendment challenge, "[t]o conclude that a dispute like this would arise in the future requires us to imagine a sequence of circumstances too long to credit"). Cf. Bellotti, 435 U.S. at 774 (circumstances were capable of repetition in light of legislature's having placed the issue on the ballot on four previous occasions).

---

however, there is no dispute about the construction of the statute or how it operates, and McConnell v. FEC, 540 U.S. 93 (2003), has already provided substantial guidance about the constitutionality of the electioneering communication provision.

5

The circumstances under which this lawsuit arose indicate additional uncertainty about whether CCL will have sufficient inclination or resources to run another ad such as "Crossroads" to make the instant controversy capable of repetition. CCL filed this lawsuit only after receiving an email from Focus on the Family, an organization based in Colorado, regarding "possible legal action needed." See FEC's Opposition to Plaintiff's Motion for a Preliminary Injunction at 7-8. There is no evidence that, before receiving this email, CCL had any plans to run broadcast advertising this year. See Heath Dep. at 45-46. CCL, moreover, did not have the funds to pay to broadcast "Crossroads" at the time it filed its complaint. Id. at 52, 54, 65-68, 121. Whether CCL would decide on its own to put together such a broadcast campaign, in the absence of a solicitation to help create a test case on the constitutionality of the statute, is entirely unclear. In sum, it is not at all apparent that CCL can meet its burden of showing that the controversy concerning the Crossroads ad is capable of repetition.

Finally, "[u]nder the evading review prong, the question is whether 'the challenged activity is by its very nature short in duration, so that it could not, or probably would not, be able to be adjudicated while fully alive.'" Pharmachemie B.V., 276 F.3d at 633 (internal citation omitted; emphasis in original). Even if the Court were to find that the wrong alleged by CCL is capable of repetition under the test discussed above, it may be that such a controversy is capable of being adjudicated while still alive. If CCL finds itself in the same situation again, it may have significantly more time to plan its broadcasts and seek judicial relief. Moreover, BCRA § 403 explicitly provides for the expedition of constitutional challenges to "any provision" of the statute.[2] The three-judge court that hears such a case has "the duty … to advance on the docket and to expedite to the greatest possible extent the disposition of the action." BCRA § 403(a)(1),

---

[2]     BCRA, Pub. L. No. 107-155, Title IV, § 403, 116 Stat. 81, 113 (2002); Note, 2 U.S.C. 437h ("Judicial Review").

6

(4). Review of a final decision by that court bypasses the court of appeals and goes "directly to the Supreme Court," which also has a duty to expedite. BCRA § 403(a)(3), (4). In addition, Congress shortened the usual time for filing the notice of appeal and a jurisdictional statement. Compare BCRA § 403(a)(3) with Sup.Ct. R. 18.[3]

## II. CCL'S GENERAL CLAIMS ABOUT HYPOTHETICAL GRASSROOTS LOBBYING ARE NOT RIPE

CCL's concession that it has no specific plans to run any ads in the future establishes that its claims about future grassroots lobbying are not ripe. "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Renne v. Geary, 501 U.S. 312, 316 (1991) (quoting Warth v. Seldin, 422 U.S. 490, 517-18 (1975)). Here, CCL has brought an as-applied challenge, yet it fails to adduce any specific future electioneering communications to which the statute at issue would be applied; instead, it alleges abstractly that it may run hypothetical ads in the future that will be "materially similar" to the Crossroads ad it planned to broadcast before the June 13, 2006 Maine primary. But having yet to whittle an immense range of possible future conduct into proportions specific enough to "present the constitutional issues in clean cut and concrete form," CCL's claims about hypothetical grassroots lobbying provide the Court with no particular facts to analyze. Renne, 501 U.S. at 322; see also Clinton v. Jones, 520 U.S. 681, 690 n.11 (1997) ("It has long been the Court's 'considered practice not to decide abstract, hypothetical or contingent questions … or to decide any constitutional question except with reference to the particular facts to which it is to be applied'") (quoting Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945). Thus, CCL's claims are neither fit for judicial decision, nor adequate to demonstrate any

---

[3] But cf. Bellotti, 435 U.S. at 774. Although Bellotti found that 18 months was "too short a period of time for appellants to obtain complete judicial review," that case did not involve a statutory requirement of expedited judicial review.

7

hardship to CCL of withholding adjudication until the Court has a record adequate to support an informed decision. See Thomas v. Union Carbide, 473 U.S. 568, 581 (1985) ("[T]he fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness") (internal quotation marks omitted).

> **A. CCL's General Claims About Its Hypothetical Grassroots Lobbying Ads Provide No Basis For An As-Applied Constitutional Challenge And Are Not Fit For Judicial Decision**

CCL has not alleged with any specificity when it will run any future electioneering communication, where it will do so, the broadcast medium it will use, the federal candidate it will mention, the ad's subject matter or text, or anything about the electoral environment in which the ads might air. Rather, CCL has alleged nothing more than that it might some day run an ad that mentions a yet unidentified candidate and addresses one of nine different, broad issue areas. See Verified Complaint ¶ 16; CCL Memo at 6. "Such 'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require." Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992) (emphasis in original) (discussing standing). Nor do such inchoate intentions support a finding of ripeness. See Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997) (injury-in-fact prong of the standing doctrine overlaps with the hardship analysis of the ripeness doctrine).

CCL's opposition ignores the fact that its claims about future unspecified ads are part of an as-applied challenge, which, to succeed, must be fact specific. See, e.g., Ada v. Guam Soc. of Obstetricians & Gynecologists, 506 U.S. 1011 (1992) (Scalia, J. dissenting) (in an as-applied challenge "the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional") (emphasis added);

8

Patlex Corp. v. Mossinghoff, 771 F.2d 480, 488 (Fed. Cir. 1985) (in an-as applied challenge "the litigant contests the application of the provision to his situation"). McConnell has already upheld the electioneering communication provision on its face, so CCL is foreclosed from attacking that provision in its general application. Because CCL's future claims are so abstract and sweeping, they are indistinguishable from a facial challenge and must be dismissed as unripe.

CCL asserts (Opp. at 7) that it has alleged sufficient details about the "form, timing and placement" of its hypothetical grassroots lobbying ads. In fact, CCL has alleged virtually none. If by "form" CCL is suggesting that it is sufficient to allege that it will someday run a broadcast ad that mentions both a federal candidate and a legislative issue, that "form" is so sketchy as to be meaningless in a proper as-applied challenge. Regarding the "timing" of its hypothetical ads, CCL has not identified any particular election or electioneering communication window in which the ads will run. Indeed, CCL has repeatedly claimed (Opp. at 8; Heath Decl. ¶ 12) that it has no control over when the ads might run because the timing of the ads depends on the vagaries of the legislative process. Finally, in terms of the "placement" of the ads, CCL has not identified any specific geographic area other than the state of Maine, which encompasses two House districts. Nor has CCL identified the radio or television stations on which it might "place" its ads, which would at least indicate that its future ads would be broadcast to more than 50,000 persons and thus meet part of the definition of "targeted to the relevant electorate" in 2 U.S.C. 434(f)(3)(C).[4]

---

[4] The fact that CCL once before ran an ad in 2004 that mentioned Senators Collins and Snowe does nothing to make its future hypothetical grassroots lobbying ads any less speculative. In Lujan, 504 U.S. at 563-64, for example, the Supreme Court found that previous visits by members of the complainant organization to the allegedly jeopardized habitats of endangered species did not help demonstrate "imminent injury" for standing purposes: "the affiants' profession of an 'inten[t]' to return to the places they had visited before — where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species — is simply not enough."

Although CCL brushes aside (Opp. at 7) Renne with a conclusory assertion that its general allegations about "form, timing and placement … fully meet the ripeness concerns in Renne," the lack of specificity CCL provides is almost identical to what the Supreme Court found dispositive when it held that the allegations in Renne were not ripe. CCL's factual averments are no more specific than the inadequate allegations in Renne, where the complainants challenged a state constitutional provision barring political parties from endorsing candidates for nonpartisan office. The Renne complainants had merely alleged that they "desire[d] to endorse, support, and oppose candidates for city and county office …" 501 U.S. at 316. In finding no ripe controversy, the Renne Court noted "respondents do not allege an intention to endorse any particular candidate." Id. at 321. Here, too, CCL has not identified a single federal candidate that will be referenced in its hypothetical ads. In Renne, the complainants' bare allegations left the Court in the dark about the "nature" of their purported future endorsements. Id. at 322. Here, too, CCL has not provided the text of any ad or identified the issue that will be the subject of the ads, other than it will fall within any one of nine areas. In Renne, the Court did not know how any endorsement would be publicized. Id. Here, too, CCL has not alleged with any specificity when or where its ads will run.[5]

Indeed, CCL's hypothetical ads are far less ripe than the claims in Renne, because here the Court's analysis of CCL's constitutional claims will necessarily involve the specific details of the ads' text and the context in which they would be broadcast. While the Supreme Court's concerns in Renne did not appear to extend to the question of whether the particular wording

---

[5]   CCL incorrectly claims (Opp. at 5) that the "sparse record evidence noted by the Court in Renne v. Geary is not analogous to the record here and, in any event, the Court did not make such factors decisive in a ripeness analysis." In fact, however, there is no record here about CCL's future ads, and in Renne the Court explained that "we cannot decide the case based upon the amorphous and ill-defined factual record presented to us." Id. at 324 (emphasis added).

10

used by a political party would constitute an "endorsement," here the analysis of an as-applied challenge may examine whether the ad suggests that the "lobbying" issue is relevant to the candidate's election, how it characterizes the candidate's position, and the interrelationship (if any) between the "lobbying" issue and the relevant campaign issues at the time.

      CCL cannot make an end-run around the factual specificity required of an as-applied constitutional challenge with the conclusory assertion (Opp. at 6) that its hypothetical grassroots lobbying ads will be "materially similar" to Crossroads. Labeling those unknown facts "materially similar" does not make them any more definite or reviewable. Considering that CCL has identified nine broad issue areas as potential subjects of its hypothetical ads, it is unclear what issue an ad "materially similar" to "Crossroads" would address, or, for that matter, in what terms the text of any ad might characterize the unidentified federal candidate's past legislative actions. The Court should not be asked to categorize and speculate about the limitless number of ads that could be drafted that might qualify as "materially similar" to the Crossroads ad, depending on what criteria the Court might find to be "material." For example, is an ad that states, "Tragically, Congressman Smith would support laws providing halfway houses for sexual predators on parole," materially similar to the Crossroads ad? Would the answer be the same if the ad were to be run on November 1 and there were no federal legislation scheduled for debate at that time concerning sexual predators? Would it be "materially similar" if the treatment of sexual predators were a prominent campaign issue, or if Congressman Smith, unlike Senator Snowe in the 2006 primary election, had a competitive opponent?

      Likewise, CCL cannot avoid the factual specificity required in an as-applied challenge by asserting (Opp. at 9) that the "abundance" of issues identified by it as potential subjects of its hypothetical ads makes it "exponentially" more likely that the League will be forced to withdraw

11

one ad at some point. The ripeness question in an as-applied challenge is whether the imminent likelihood of a <u>particular</u> event obliges a court to exercise its remedial powers, not whether it is possible that something might occur one day that might require judicial resolution. While multiplying the occurrence of speculative events might increase the odds that that one of them might occur one day, it does not make it any more likely that one particular event will occur in a concrete form that would lend itself to proper adjudication. (A high-jackpot lottery with record sales may be more likely to produce a winner than one where few tickets are sold, but its popularity makes it no easier to predict who the one winner will be.)

Moreover, CCL's abstract future claims are especially unripe because the issues they raise are not purely legal. <u>See</u> <u>Abbott Labs v. Gardner</u>, 387 U.S. 136, 149 (1967) (preenforcement challenge to a statute or regulation may be fit for judicial resolution if the issues raised are purely legal), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99 (1977); <u>Thomas v. Union Carbide</u>, 473 U.S. 568, 581 (1985) (same); <u>New Orleans Pub. Serv. Inc. v. Council of New Orleans</u>, 833 F.2d 583, 587 (5th Cir. 1987) ("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required"). Here, not only has CCL failed to allege specific facts about its future ads, but any analysis of whether the statue is unconstitutional as applied to a particular ad requires an examination of facts specific to CCL and those ads as well as the context in which they might run. For example, as we explained in our Opposition to CCL's Motion for Consolidation, both the Supreme Court and the three-judge district court in <u>McConnell</u> relied upon evidence that went beyond the text of the communications when evaluating the constitutionality of the electioneering communication provisions. In <u>Wisconsin Right to Life v. FEC</u>, the three-judge district court, when denying WRTL's Motion for Preliminary Injunction,

found a number of facts about the organization's previous advocacy and candidate endorsements, as well as patterns and practices of using various types of media to publicize their advocacy, to be relevant to the determination of whether WRTL's advertising was of the type at which the statute was properly directed. 2004 WL 3622736 at * 3 (D.D.C. 2004). And when this Court denied CCL's request for a preliminary injunction, it found relevant to the determination of whether CCL's advertising was of the type at which the statute was properly directed Senator Snowe's past stance on the Marriage Protection Amendment, the "enthusiastic note" sounded by the CCL's own newsletter regarding a potential challenger to Senator Snowe, and CCL's ability to finance the communication by having its donor make his or her contribution to a separate segregated fund.[6]

In light of the scant factual record before this Court in this as-applied challenge relating to CCL's hypothetical grassroots lobbying, this Court should postpone review of those claims until the case can be presented in a concrete form. "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." Longshoremen's Union v. Boyd, 347 U.S. 222, 224 (1954).

---

[6]   Contrary to CCL's sweeping claim (Opp. at 9) that "the application of the law to the ads does not depend on it [sic] addressing any particular legislative issue," in some circumstances the issue that is the subject of the ads will suggest that the ads are precisely the type Congress had a compelling interest in regulating. In McConnell v. FEC, 251 F. Supp. 2d 176, 550 (D.D.C.), for example, Judge Kollar-Kotelly explained that "another indicia that an issue advertisement has an electioneering purpose is that, in certain instances, candidate-centered issue advertisements are run by organizations who have no organizational interest in the advertisement's 'issue.'"

13

> **B.     CCL's General Claims About Its Hypothetical Grassroots Lobbying Ads Demonstrate That It Does Not Face A Credible Threat of Enforcement Proceedings And That It Would Suffer No Hardship If The Court Withheld Consideration Of The Issues Until Presented In A More Concrete Form**

CCL's claims regarding unspecified future ads also are not ripe because CCL does not face a credible and immediate threat of enforcement. Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997) (threat must be "credible and immediate, and not merely abstract or speculative"). CCL has not engaged in any proscribed conduct, and it has alleged no specific plans to do so. Thus, for much the same reasons why CCL's future advocacy is too abstract for the Court to adjudicate, it is too speculative for the Commission to even consider prosecuting. Simply put, there cannot be any threat of enforcement against a particular advertisement that is undefined and non-existent — let alone a threat that is credible and immediate.[7] "The power of courts … to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." Golden v. Zwickler, 394 U.S. 103, 110 (1969).

As the D.C. Circuit explained in Navegar, "[t]he question of whether a threat of prosecution adequate to satisfy the requirements of justiciability is present in any particular preenforcement challenge is a factual and case-specific one." 103 F.3d at 999. The Court then held that Navegar, a firearms manufacturer, faced a credible and immediate threat of enforcement of a newly-enacted federal statute, the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796, which prohibited the manufacture of certain semiautomatic assault weapons. Critical to the Court's finding an imminent threat of

---

[7]     Indeed, the definition of "threat" itself implies a degree of imminence that is absent here. "Threat: n. 1. a declaration of an intention or determination to inflict punishment, injury, etc., in retaliation for, or conditionally upon some action or course; menace … 2. an indication or warning of probable trouble … 3. a person or thing that threatens …" Random House Webster's Unabridged Dictionary (2nd ed. 2001).

14

enforcement was that the Act prohibited the manufacture of weapons that only Navegar made, and that federal agents had visited Navegar on the very day Congress passed the Act to notify the firearms manufacture of its prohibitions and to conduct an inventory of weapons that would be grandfathered in under it.  103 F.3d at 1000.  CCL has alleged nothing remotely as imminent and concrete here, regarding either its own conduct or any possible threat of prosecution.

    CCL's assertion (Opp. at 4-5, 11) that a general threat of enforcement against it is credible because the electioneering communication provision remains on the books and the Commission has created no regulatory exceptions, see 2 U.S.C. 434(f)(3)(B)(iv), is a red herring.  Again, CCL has brought an as-applied challenge, not a facial one, so it must demonstrate a credible threat of enforcement against its own specific actions, not just that the Commission will generally continue to enforce the Federal Election Campaign Act ("Act").  Likewise, CCL's reliance (Opp. at 5) upon Chamber of Commerce v. FEC, 69 F.3d 600 (D.C. Cir. 1995), and its discussion of 2 U.S.C. 437g(a) is misplaced.  Although that provision allows any person "who believes a violation of [the Act] … has occurred" to file a complaint with the Commission, 2 U.S.C. 437g(a)(1), and to file suit against the Commission if its complaint is later dismissed by the Commission, 2 U.S.C. 437g(a)(8), it is difficult to imagine anyone filing a complaint against CCL simply because it has stated that some day it may run another ad like Crossroads.  More importantly, it is absurd to think that the Commission could be faulted by a reviewing court for dismissing a complaint that rests on allegations of future misconduct that may never occur and that is described in only the most general terms.

    Moreover, CCL cannot demonstrate any hardship in waiting until its allegations can be presented in a more concrete form.  "[F]or a case to be ripe for review, what is required is that the interests of the court and agency in postponing review until the question arises in some more

concrete and final form, be outweighed by the interest of those who seek relief from the challenged action's immediate and practical impact upon them." Diamond Shamrock Corp. v. Costle, 580 F.2d 670, 672 (D.C. Cir. 1978) (emphasis added). Accord Abbott Labs, 387 U.S. at 152 (impact of law on litigants was "sufficiently direct and immediate as to render the issue appropriate for judicial review"); Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733-34 (1998) (Sierra Club had not suffered hardship for ripeness purposes where it had not "pointed to any other way in which the [Forest Service's land resources management plan] could now force it to modify its behavior in order to avoid future adverse consequences …"). CCL has not demonstrated that the prospective application of the electioneering communication provisions on its hypothetical grassroots lobbying ads has any immediate and practical impact on its actions. CCL has not even alleged that it has modified its behavior or suffered any current hardships on account of the electioneering communication provisions' effect on its hypothesized future advocacy. For example, CCL has not even alleged that it has established a federal PAC but been unable to raise money for it, or that it has plans to broadcast advocacy that it will have to forego because of the electioneering communication provision. Indeed, CCL has presented no evidence about any particular future plan.[8]

---

[8] To the extent CCL has no specific plans regarding any hypothetical grassroots lobbying ads and has suffered no hardship on account of the Act's prospective application to those future ads, this case is readily distinguishable from two Ninth Circuit cases CCL relies upon. In California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1093 (9th Cir. 2003), the Ninth Circuit held that the plaintiff's claims regarding future political expenditures were ripe where the plaintiff had "introduced evidence before the district court that it planned to spend more than $1000 on a communication in the November 2000 general election in order to defeat California Proposition 34." In Arizona Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003), the plaintiff brought a facial challenge, and the Ninth Circuit found that the plaintiff had suffered actual harm when it delayed particular speech before the September 2000 primary election.

16

It is no answer for CCL to say that it has suffered hardship because it faces a chill from a general possibility of future enforcement of the Act. "Even the 'chilling' of the most protected First Amendment rights of free speech does not create a case or controversy without a 'specific present objective harm or a threat of specific future harm.'" National Conference of Catholic Bishops v. Smith, 653 F.2d 535, 539-40 (D.C. Cir. 1981) (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)). See also Martin Tractor v. FEC, 627 F.2d 375, 379 n.9 (D.C. Cir. 1980) ("the mere existence of a statute, regulation, or articulated policy is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms"). Accordingly, CCL's claims regarding its hypothetical grassroots lobbying ads are not ripe, and the Court should dismiss them.

## CONCLUSION

For the reasons stated above, the Court should grant defendant's Motion to Dismiss Plaintiff's Claims Regarding Hypothetical Grassroots Lobbying.

Respectfully submitted,

_____/s/_____
Lawrence H. Norton
General Counsel

_____/s/_____
Richard B. Bader
Associate General Counsel
(D.C. Bar # 911073)

_____/s/_____
David Kolker
Assistant General Counsel
(D.C. Bar # 394558)

_____/s/_____
Steve N. Hajjar
Attorney

|  |  |
|---|---|
|  | FOR THE DEFENDANT |
|  | FEDERAL ELECTION COMMISSION |
|  | 999 E Street, N.W. |
|  | Washington, D.C. 20463 |
| July 7, 2006 | (202) 694-1650 |