UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE CHRISTIAN CIVIC LEAGUE OF MAINE, INC., <br><br>　　　　Plaintiff, <br><br>　v. <br><br>FEDERAL ELECTION COMMISSION, <br><br>　　　　Defendant, <br><br>　　　and <br><br>JOHN MCCAIN, RUSSELL FEINGOLD, CHRISTOPHER SHAYS, MARTIN MEEHAN, AND TOM ALLEN, <br><br>　　　　Intervenor-Defendants. | Civil Action No. 06-0614 (JWR, LFO, CKK) <br>(Three-Judge Court) |

MEMORANDUM OPINION

Plaintiff Christian Civic League of Maine, Inc. (the "League") seeks declaratory and injunctive relief in support of its efforts to broadcast (1) a particular political advertisement (the "Crossroads advertisement") in advance of a June 2006 United States Senate vote and (2) "materially similar" advertisements in the future. Verified Complaint ¶ 16, Prayer for Relief (filed Apr. 3, 2006). Defendant Federal Election Commission (the "Commission"), has moved to dismiss the League's claims as "not ripe" and/or "too speculative and hypothetical to be justiciable under Article III" insofar as they pertain to any circumstances other than those surrounding the efforts of the League to broadcast the Crossroads advertisement. Commission's Motion at 1 (filed June 12, 2006). The intervenor-defendants, certain legislators (the

"Legislators"), have moved for partial judgment on the pleadings on the same aspects of the League's claims, for the same reasons. The League opposes these motions.

Additionally, the court has suggested that the balance of the case – i.e., the claims of the League insofar as they do pertain to the circumstances surrounding its efforts to broadcast the Crossroads advertisement – may be moot and not saved by the "capable of repetition, yet evading review" exception to that doctrine. *See* June 23, 2006 Order. The Legislators have agreed that this aspect of the League's claims "does . . . appear moot . . . . [and] not capable of repetition," Legislators' Response at 2 (filed July 7, 2006); the Commission has stated that the court's suggestion raises a "close question," Commission's Response at 1 (filed July 7, 2006); and the League has opposed the suggestion.

We conclude that the League's claims are (1) not ripe and/or too speculative and hypothetical to be justiciable insofar as they pertain to any circumstances other than those surrounding the efforts of the League to broadcast the Crossroads advertisement and (2) moot and not saved by the "capable of repetition, yet evading review" exception to that doctrine insofar as they do pertain to the circumstances surrounding the League's efforts to broadcast the Crossroads advertisement. Accordingly, an accompanying order grants the pending partial motions to dismiss and for judgment on the pleadings and otherwise dismisses the League's remaining claims as moot.

## I. BACKGROUND

An earlier opinion in this case (in which we denied the League's motion for a preliminary injunction) provides the factual and legal background to this dispute. *See* May 9, 2006 Memorandum Opinion. Briefly, the League – a self-styled "nonprofit, nonstock . . . ideological"

corporation that engages in some business activity, Verified Complaint ¶¶ 20, 22 – sought to use general corporate funds to broadcast the Crossroads advertisement in advance of a June 2006 Senate vote.  The Crossroads advertisement identified Senator Olympia Snowe by name; Senator Snowe was a candidate in a primary election scheduled for June 13, 2006.  The League brought suit on First Amendment grounds in recognition of the fact that the Federal Election Communications Act, as amended by the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, and codified at 2 U.S.C. § 431 *et seq*. (the "Act"), appeared to prohibit it from broadcasting the Crossroads advertisement in the described circumstances.  (The Act prohibits corporations from using general corporate funds for "electioneering communication[s]," 2 U.S.C. § 441b(a), (b)(2), defined as any "broadcast, cable, or satellite" communication, issued within thirty days of a federal primary election or sixty days of a general federal election (the "blackout period"), that "clearly identifie[s]" a candidate in that election and "target[s]" the relevant electorate, 2 U.S.C. § 434(f)(3)(A)(i)).

      The Supreme Court has previously rejected a facial challenge to the relevant provision of the Act (the "electioneering communications provision").  *See McConnell v. Federal Election Comm'n*, 540 U.S. 93, 189-94, 203-11 (2003).  In *McConnell*, the Court recognized that the electioneering communications provision extends to prohibit some "issue advertis[ements]."  540 U.S. at 126-32, 189-94, 203-05.  The Court concluded, however, that that provision is tailored sufficiently narrowly to meet a compelling governmental interest and to survive constitutional scrutiny.  *See id.* at 193, 204-06.  As the Court noted: "[C]orporations and unions may finance genuine issue ads during [the blackout periods] by simply avoiding any specific reference to federal candidates, or in doubtful cases by paying for the ad from a segregated fund." *Id.* at 206.

Subsequently, in *Wisconsin Right to Life, Inc. v. Federal Election Commission*, 126 S. Ct. 1016, 1018 (2006), the Court clarified that its decision in *McConnell* did not pose an absolute bar to as-applied challenges to the electioneering communications provision; i.e., the First Amendment might require the exemption of particular advertisements, in particular circumstances, from the Act's definition of an electioneering communication. The League argues that the Crossroads advertisement (as well as "materially similar" future advertisements) requires such an exemption.

On May 9, 2006, we denied the League's motion for a preliminary injunction. The League did not run the Crossroads advertisement during the blackout period in advance of the June 13, 2006 primary. *See* League's Response to Court's Suggestion of Mootness at 5 (filed June 30, 2006). In early June 2006, the Senate voted on the legislation to which the Crossroads advertisement pertained. *See* Joint Report of the Parties at 1 (filed June 15, 2006).

## II. ANALYSIS

The League's claims with respect to the Crossroads advertisement are moot. Yet, the League argues that its lawsuit should proceed nonetheless because (1) its claims reference not only the Crossroads advertisement but also "materially similar" advertisements that it might broadcast in the future, Verified Complaint ¶ 16, and/or (2) the Crossroads advertisement portion of the case qualifies for the "capable of repetition, yet evading review" exception to the mootness doctrine. We disagree on both issues.

**A.   The Non-Crossroads Claims.**

Insofar as the League's claims pertain to any circumstances other than those surrounding its efforts to broadcast the Crossroads advertisement (the "non-Crossroads claims"), those claims

are not justiciable because they are not ripe and/or are too speculative and hypothetical.

The League bears the burden of clearly alleging and ultimately proving that the non-Crossroads claims are justiciable. *See Renne v. Geary*, 501 U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.") (quotation marks omitted). Here, far from establishing such justiciability, the League has admitted that it has no current plans to broadcast any advertisements about any issue.[1] First, at deposition, its Executive Director testified:

> Q: . . . . Do you have any current plans to run ads on radio or TV about the federal marriage amendment other than the Crossroads ad?
> A: No.
> Q: Do you have any plans to run ads on radio or TV about anything other than the Crossroads ad?
> A: No.
>
> . . . .
>
> Q: Paragraph 16 [of the League's Verified Complaint] says that [the League] plans to run materially similar ads after mid June on a range of other issues; correct?
> A: Uh-huh. Uh-huh.
> Q: Is that a correct statement of [the League]'s plans today?
> A: Yes.
> Q: Can you describe those plans?
> A: No.
> Q: Why not?
> A: Because it's not beyond a simple plan or intention to do that.

---

[1] In resolving a jurisdictional issue on a motion to dismiss or motion for judgment on the pleadings, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Herbert v. National Academy of Sciences*, 974 F.2d 192 (D.C. Cir. 1992).

> . . . .
>
> Q: Is there any specific issue you can tell me that [the League] plans to run a radio or TV ad on in the future other than the Crossroads ad?
> A: No. We have no other script written. We have no other issues selected for future campaigns.

Commission's P.I. Opp. (filed Apr. 17, 2006), Ex. A (Apr. 2006 Deposition of Michael Heath at 74-75, 82-83). The League's attorney forthrightly confirmed this lack of plans in a May 22, 2006 report to the court and at a June 5, 2006 status conference. *See* Joint Report at 8 (filed May 22, 2006) ("no concrete plans to run ads"); June 5, 2006 Status Conference Transcript at 14 ("We have no current plans to do an ad . . . .").

"Article III . . . confines . . . [the courts] to resolving real and substantive controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (quotation marks omitted); *see also International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 224 (1954) ("Determination of the . . . constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function."). This is no less true in cases involving First Amendment arguments: "The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969). "Even the 'chilling' of the most protected First Amendment rights of free speech does not create a case or controversy without a 'specific present objective harm or a threat of specific harm.'" *National Conference of Catholic Bishops v. Smith*, 653 F.2d 535, 539-40 (D.C. Cir. 1981) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

Accordingly, to be justiciable, the League's challenge to the constitutionality of the Act's electioneering communications provision must arise from a dispute that is "credible and immediate, and not merely abstract or speculative." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997); *see also id.* (courts must avoid "entangle[ment] in abstract disagreements") (quotation marks omitted). The dispute must be of "'sufficient immediacy and reality,'" *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1137 n.3 (D.C. Cir. 1989) (quoting *Golden*, 394 U.S. at 108-09), and not based on a "'hypothetical state of facts,'" *Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963-64 (D.C. Cir. 1995) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)).

In *Renne v. Geary*, 501 U.S. 312 (1991), the Supreme Court held non-justiciable (as un-ripe) a First Amendment challenge to a California constitutional provision that barred political parties from endorsing candidates for non-partisan offices. In so ruling, the Court relied on the plaintiffs' failure to allege a present intention to endorse any particular candidate or that any particular candidate desired to publicize such an endorsement. *See Renne*, 501 U.S. at 321. The Court further relied on the lack of an adequate factual record regarding "the nature of the endorsement, how it would be publicized, or the precise language [of the endorsement]." *Id.* at 321-22. So too here. The League has admitted that it lacks a present intention to broadcast any particular advertisement; nor has it alleged the interest of any group in having it broadcast such an advertisement. And nor has the League, necessarily, developed any factual record regarding, for example, the text of any such future advertisement; where, when, and how the advertisement would be broadcast; and/or the alternative funding opportunities that might be available to the League in the given, hypothetical situation.

The League offers three counter-arguments in support of the justiciability of the non-Crossroads claims. First, it argues that it has alleged a sufficiently concrete dispute by asserting that any future advertisement would be "materially similar" to the Crossroads advertisement. *See* League's Opp. at 5-9 (filed June 30, 2006) (quoting Verified Complaint ¶ 16). The League explains that "materially similar, by definition, means that the ads' text, placement[,] and timing would put them in contravention of the electioneering communication prohibition, just as the text, placement, and timing of the Crossroads ad put it in contravention of the electioneering communication prohibition." *Id.* at 6-7. Under this logic, however, the non-Crossroads portion of the League's claims would simply devolve into a facial challenge to the relevant statutory provision – a challenge that the Supreme Court has already rejected. *See McConnell v. Federal Election Comm'n*, 540 U.S. 93, 189-94, 203-11 (2003).

The League next relies on the decision of the United States Court of Appeals for the District of Columbia in *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997). *See* League's Opp. at 2-4 (filed June 30, 2006). As the League notes, that decision found adequately justiciable a pre-enforcement challenge to the constitutionality of a particular statute. *See Navegar*, 103 F.3d at 999-1001. In *Navegar*, however, the disputed statute, which was newly enacted, prohibited the manufacture of certain weapons of which the plaintiff was the only manufacturer. *See id.* at 1000. Additionally, federal agents had visited the plaintiff-manufacturer on the very day of the statute's enactment to inventory the plaintiff's already-manufactured weapons, which were grandfathered under the statute. *See id.* Here, the relevant provision of the Act does not specifically target the League, and federal agents (e.g., Commission staff) have not taken special notice of League activities. As such, the present case

is more analogous to the balance of the *Navegar* decision – which part of the decision finds non-justiciable challenges by the plaintiff-manufacturer to certain other, more generally applicable statutory provisions. *See id.* at 1001-02.

Finally, the League argues that it faces a non-speculative threat of prosecution because it has alleged a desire to broadcast advertisements that, by definition, would violate the relevant provision of the Act. *See* League's Opp. at 9-12 (filed June 30, 2006). The League's claims are speculative, however, in that it has no current plans to run any particular advertisement in any particular circumstances. This leaves the threat of enforcement speculative, for many of the reasons discussed above. *See, e.g.*, *National Conference*, 653 F.2d at 539-40.

What the League really seeks via its non-Crossroads claims is for the court to promulgate a rule exempting all "grass roots lobbying" – a phrase the League never defines – from the Act's electioneering communications provision.[2] This court, however, decides present disputes based on particular facts – and especially so where faced with an as-applied challenge, as here. Absent a concrete dispute, this court lacks jurisdiction.[3]

**B.      The Crossroads Claims.**

Insofar as the League's claims do pertain to the circumstances surrounding its efforts to

---

[2] The Commission has recently considered a grassroots lobbying exemption to the Act's electioneering communications provision. *See* Audio Recordings Attached to Agenda Items 3&4 at www.fec.gov/agenda/2006/agenda20060829.shtml (visited Sept. 7, 2006). Noting it judicially, we deem it of no consequence here.

[3] The Commission offers an advisory opinion process by which it will offer parties, within sixty days, a ruling on whether it considers that the broadcast of a particular advertisement, in the context of particularly described circumstances, would run afoul of the Act's electioneering communications provision. *See* 2 U.S.C. § 437f; *see also* www.fec.gov/pages/brochures/ao.shtml (visited Sept. 7, 2006).

broadcast the Crossroads advertisement (the "Crossroads claims"), those claims are moot and not saved by the capable of repetition yet evading review exception to that doctrine. Those claims are moot in that the court could not order any effectual relief with regards to the Crossroads advertisement: because the Senate vote referenced in that advertisement has come and gone, injunctive or declaratory relief regarding the advertisement is no longer of use to the League. Nor are the Crossroads claims capable of repetition in that those claims were tied to the specific circumstances of the Crossroads advertisement. And, to any extent to which those circumstances reasonably may repeat (e.g., by defining those circumstances in the most general of terms), they do not necessarily evade review.

**1.    The Crossroads Claims Are Moot.**

The Crossroads claims are moot. A claim is moot where a court, on that claim, "cannot grant 'any effectual relief whatever.'" *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002) ("A case is moot if events have so transpired that [a court] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.") (quotation marks omitted). Here, the occurrence of the June 2006 Senate vote on the relevant legislation leaves the court without power to provide effectual relief with regard to the Crossroads advertisement; the window of time in which the League could run that advertisement has expired. "A federal court has no 'power to render advisory opinions [or] . . . decide questions that cannot affect the rights of the litigants in the case before them.'" *Alliance for Democracy v. Federal Election Comm'n*, 335 F. Supp. 2d 39, 42 (D.D.C. 2004) (quoting *National Black Police Ass'n v. District of Columbia*,

108 F.3d 346, 349 (D.C. Cir. 1997)).

>    2.   **The Crossroads Claims Do Not Qualify for the "Capable of Repetition, Yet Evading Review" Exception to the Mootness Doctrine.**

Nor do the Crossroads claims qualify for the "capable of repetition, yet evading review" exception to the mootness doctrine; those claims are neither "capable of repetition" nor "evad[e] review." The Supreme Court has recognized the "capable of repetition, yet evading review" exception at least since its decision in *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515 (1911). The exception remains applicable, however, "only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and only upon the satisfaction of "both [of its] prongs," *Pharmachemie*, 276 F.3d at 633. "To invoke this exception, petitioners have the burden to demonstrate that [its requirements are met]." *Public Utils. Comm'n of the State of Calif. v. Federal Energy Regulatory Comm'n*, 236 F.3d 708, 714 (D.C. Cir. 2001); *accord Southern Co. Servs., Inc. v. Federal Energy Regulatory Comm'n*, 416 F.3d 39, 43 (D.C. Cir. 2005).

In order for the League to demonstrate the applicability of the "capable of repetition" prong, it must establish a "reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam) (quotation marks omitted) (emphasis added). The Supreme Court has not held that a "mere physical or theoretical possibility" of repetition is sufficient to establish the exception's applicability because, if it were, "virtually any matter of short duration would be reviewable." *Id.* The alleged wrong at issue "must be defined in terms of the precise controversy it spawns." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422-23 (D.C. Cir. 2005). Even so defined, an as-applied challenge to a statute *may* be

"capable of repetition" for purposes of the exception. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974).

"Challenges to rules governing elections are the archetypal cases for application of [the capable of repetition, yet evading review] exception." *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir. 1998). The exception, however, does not automatically apply in such a circumstance. *See, e.g.*, *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 187-88 (1979) (dismissing as moot challenge to authority of Chicago Board of Election Commissioners to enter settlement agreement regarding ballot access signature requirement).

Here, the Crossroads claims are not "capable of repetition." The Crossroads claims constitute an as-applied, i.e., fact-specific, challenge to the relevant provision of the Act. As such, those claims depended on the confluence of specifics, including: a speaker that happened to be incorporated, a speaker intent on using corporate funds (rather than political action committee funds) to fund its proposed speech, a speaker intent on using broadcast media to publish its speech, and a speaker intent on mentioning a candidate for federal office in its proposed speech and doing so within thirty days of that candidate's primary election. In our opinion denying the League's preliminary injunction motion, we noted the relevance of additional, "as-applied" facts, including the League's reference in its proposed speech to a past legislative action of Senator Snowe as "[u]nfortunate[]" and the fact that the League had previously sounded an enthusiastic note in discussing a potential electoral challenge to Senator Snowe. *See* May 9, 2006 Memorandum Opinion at 10. The chances of recurrence of this perfect storm is small, thereby foreclosing application of the "capable of repetition, yet evading review" exception. *See Public Utils. Comm'n*, 236 F.3d at 714 ("The Supreme Court has . . . required not

merely a physical or theoretical possibility of recurrence but a reasonable expectation if not a demonstrated probability that petitioners will be subject to the same action.") (quotation marks and citation omitted); *People for the Ethical Treatment of Animals*, 396 F.3d at 424 ("To conclude that a dispute like this would arise in the future requires us to imagine a sequence of coincidences too long to credit.").

The League counters that a ruling that its Crossroads claims are not capable of repetition would prevent similar claims from ever gaining meaningful review: the claims routinely will be mooted before full appellate review. This is not necessarily true – to any extent to which the League's claims are capable of repetition, they will not necessarily evade review. A plaintiff could bring its lawsuit much earlier than did the League. A corporate plaintiff, for example, might bring a lawsuit more than a year in advance of an election if it had concrete plans to broadcast within sixty days of the election a specific advertisement, paid for with corporate funds, that mentioned a declared candidate. Such a lawsuit would be ripe and stand a strong chance of gaining full appellate review in light of the Act's requirement that the judiciary expedite consideration of such challenges. *See* Act, § 403(a)(4) ("It shall be the duty of the United States District Court for the District of Columbia and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of [any action challenging the constitutionality of any provision of the Act]."); *cf. First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (eighteen months an inadequate period of time for complete judicial review, in context of a statute that did not require expedition).

### III. CONCLUSION

For the foregoing reasons, an accompanying order grants the pending motions and

otherwise dismisses the League's claims as moot.

/s/

Judith W. Rogers
UNITED STATES CIRCUIT JUDGE

/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

/s/

Colleen Kollar-Kotelly
UNITED STATES DISTRICT JUDGE

DATED:    September 27, 2006